Bradley D. Owens, Esq.
Jermain Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK  99503
Telephone: (907) 563-8844
Facsimile: (907) 563-7322
bradowens@jdolaw.com

Counsel for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR ALASKA

M.H., by his legal guardian, L.P.; A.D. by his
legal guardian, J.N., and S.T. by his legal
guardian, A.T., on behalf of themselves and all
others similarly situated,

Plaintiffs,

vs.

Anchorage School District,

Defendant.

Case No. 3:06-cv-00138 (TMB)

## MEMORANDUM IN SUPPORT OF ANCHORAGE SCHOOL DISTRICT'S MOTION TO DISMISS

## I.    INTRODUCTION

This lawsuit is a putative class action brought by three named plaintiffs, each of whom is

or has been a student within the Anchorage School District and does or has received special

education services.  Each of these students also has been subject to discipline at various times by

the District for various offenses, and now claims that the discipline imposed, as well as the

discipline policy itself, violate the Individuals with Disabilities Education Act ("IDEA") and/or

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Section 504 of the Rehabilitation Act ("Section 504"). Because these claims are claims for which exhaustion of remedies is required, or have been resolved on the merits, the District now moves to dismiss plaintiffs' claims for failure to state any claims for which relief can be granted.

## II.    FACTUAL & PROCEDURAL OVERVIEW

Prior to filing this lawsuit, two of the named plaintiffs filed IDEA due process hearing requests with the District. M.H.'s claims were largely rejected after a full due process hearing. However, after he appealed, he settled his claims and dismissed his appeal with prejudice. A.D. filed for a due process hearing but settled his claims prior to the start of the hearing. While he "reserved" the claims in this lawsuit, he received all the relief to which he was entitled under the law. In addition, he has not pursued his due process rights as to any "reserved" claims. S.T. has never filed a due process hearing request on any of the claims asserted in this action.

### A.    Plaintiff M.H.

#### 1.    Factual Overview

The facts of M.H.'s involvement in special education and disciplinary processes at ASD are set forth in detail in the Final Decision and Order of DEED Hearing Officer Andrew M. Lebo (attached hereto as Exhibit 1), and summarized briefly here. At the time of the disciplinary action at issue in M.H.'s due process complaint and now in this lawsuit, M.H. was an eighth grade student at Romig Middle School. [Ex. 1, p. 6] Earlier in his education, M.H. was identified by ASD as eligible for special education services because of a speech impairment and a learning disability. [*Id.*, p. 5] In November 2003, however, he was "exited" from special education. At that time, M.H.'s parent "signed off on an agreement that [he] was no longer eligible for special education services." M.H.'s parent received a "Notice of Procedural Safeguards" prior to M.H. being exited from special education, but "did not dispute [M.H.'s]

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 2 of 18

November 2003 exit from special education services, nor did she file a request for due process hearing regarding the exiting." [*Id.*, pp. 5-6]

In seventh grade, M.H. received two out-of-school suspensions for willful disobedience, and was suspended for a total of four days. [*Id.*, p. 6] In November of the following year, M.H. "began engaging in problematic conduct at school," leading to several out-of-school suspensions totaling 11 days. [*Id.*, p. 8] In December 2005, M.H. engaged in conduct involving profanity, obscene language, and threats made to a Romig teacher. Based on this conduct, M.H. was suspended for nine days and recommended for expulsion. [*Id.*]

On January 25, 2006, M.H.'s parent requested that he be evaluated for special education eligibility. [*Id.*, p. 8] In February 2006, the District offered M.H. services at its Outreach program. [*Id.*, pp. 8-9] On February 17, M.H. and his parent toured the Outreach program and filled out enrollment paperwork. But M.H.'s parent later informed the Outreach program that M.H. would not be attending Outreach. [*Id.*, p. 9]

Meanwhile, in February and March 2006, M.H. was evaluated and found eligible under a certification of Other Health Impairment. [*Id.*, p. 9] An IEP was developed on April 3, 2006. [*Id.*, p. 10] However, because M.H. had been suspended and recommended for expulsion, the District was required to conduct a manifestation determination review prior to allowing him to return to school. [*Id.*]

On April 12, 2006, the District held a manifestation determination meeting to determine whether or not M.H.'s behavior "of use of profanity and making threatening statements to a teacher" had been a manifestation of his disability. The team made a finding that M.H.'s behavior had *not* been a manifestation of his disability. [*Id.*, p. 10] Although the manifestation

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)                                    Page 3 of 18

decision left open to the District the option of expelling M.H., the District decided not to do so, and instead moved him to a new school where he could make a "fresh start." [*Id.*, p. 12]

M.H. began attending his new school on April 24, 2006. [*Id.*, p. 12]  As noted, he had not been receiving educational services since his suspension began, due to his parent's decision not to enroll him in Outreach. [p. 9]

### 2. <u>January 22, 2006: M.H. Files Request for Due Process Hearing Regarding the Disciplinary Proceedings.</u>

On January 22, 2006, M.H.'s guardian filed a Notice of Request for Due Process Hearing regarding M.H.'s discipline and expulsion. [Ex. 2]  The Notice alleged that M.H. had had problems in school since being exited from special education, that M.H. had recently suffered several traumatic brain injuries, that the District did not properly advise M.H. or his guardian of his rights under section 504, that M.H. should not have been expelled, and that M.H. should be receiving special education services. [*Id.*]

In the proceedings that followed, M.H.'s guardian alleged, *inter alia*, that the District had a "basis of knowledge" as to M.H.'s disability prior to his parent's request that he be reevaluated for special education, and that the District violated section 504 by suspending M.H. for 11 days in 2005. [Ex. 1, pp. 13, 21]  M.H. further argued that the placement at the new school was improper, that the manifestation determination was in error, and that M.H. was entitled to compensatory education services. [*Id.,* p. 13]

On July 10, 2006, Hearing Officer Lebo issued a 31-page order rejecting almost all of M.H.'s claims in the due process proceeding.  Lebo found conclusively that the District did not have knowledge that M.H. was a student entitled to special education services at the time of his offense. [*Id.*, pp. 8, 25-26]  Lebo further found that it was because of the parent's refusal of

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 4 of 18

services that M.H. instead "stayed at home with Parent and received no educational services until April 24, 2006." [*Id.*, p. 9] Lebo upheld the manifestation team's determination of no causality, and upheld the change of location to a new middle school. [*Id.*, pp. 14-16, 17-19]    However, Lebo did find that M.H. was entitled to resume his ASD education one week earlier than he did, and awarded him seven hours of compensatory education. [*Id.*, pp. 27-28, 30]

### 3.  April 2007: Appeal and Settlement of M.H.'s Claims.

On August 4, 2006, M.H. filed an appeal of Hearing Officer Lebo's decision in federal district court.  The parties engaged in settlement negotiations and, on April 19, 2007, entered into an agreement to settle all of the claims relating to the due process hearing, and to dismiss the appeal with prejudice.  [Ex. 3]

### 4.  June 2006: M.H. Files the Instant Lawsuit Concerning the Same Events.

In June 2006, prior to the issuance of Hearing Officer Lebo's Order on his Due Process claims, M.H. filed the instant lawsuit.  As noted above, the lawsuit is a putative class action brought by three named plaintiffs.  The only allegations in Plaintiffs' Amended Complaint which are specific to M.H. are contained in Paragraphs 7 and 16.

Paragraph 7 states that M.H. "suffers from traumatic brain injury and related disabilities," is "eligible for services under the IDEA" and Section 504, and "has been repeatedly subject to and adversely affected by the District's Disciplinary Policy during the 2005-2006 school year." [¶ 7]  Paragraph 16 discusses the same suspensions which were the subject of the Due Process Complaint and Hearing Officer Lebo's Order.  Specifically, Paragraph 16 notes that in 2005, M.H. was not receiving special education services, despite previously having received such services.  [¶ 16]  Paragraph 16 alleges that during 2005, M.H. was subjected to discipline but was not "protected" by the District's Disciplinary Policy because he was not currently identified as a

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

student with a disability.  Paragraph 16 further alleges that, because of this alleged flaw in the District's Policy, "M.H. was left without educational services from January 3, 2006 to April 24, 2006." [*Id.*]

Despite alleging elsewhere that administrative remedies in this case would be futile, the Amended Complaint acknowledges that M.H.'s parent requested a due process hearing regarding these events.  [Compare ¶3, ¶16]  The Amended Complaint further admits that the hearing officer decided the case in ASD's favor, and states that "M.H. has appealed that decision to federal court." [*Id.*]  However, M.H. has not amended his Complaint to indicate that he and the District have since entered into a settlement agreement of the claims in his due process request, and submitted a stipulation for dismissal of his claims "with prejudice."  [Ex. 2]

### B.    Plaintiff A.D.

#### 1.    Factual Background

During the 2005-2006 school year, A.D. was a seventh grader at the Benny Benson School.  [Complaint ¶ 17]  He was not certified for special education services.  During that school year, A.D. experienced a number of behavioral problems and was suspended for more than 45 days.  On April 3, 2006, A.D. was suspended for swearing at a teacher.  [Complaint ¶ 17]

#### 2.    May 2006: A.D. files Due Process Hearing Request.

On May 24, 2006, A.D.'s guardian, represented by the Disability Law Center, filed a request for an expedited hearing. [Ex. 4][1]  The request alleged that the District had violated the IDEA and Section 504 by failing to identify and determine whether A.D. had a disability or an impairment; had inadequately evaluated A.D.; did not hold a manifestation meeting relating to

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[1]    A more detailed request was resubmitted the following day, and is attached hereto as Exhibit 5.

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

disciplinary matters; and did not take various steps to ensure that A.D.'s guardian was aware of her procedural rights. [*Id.*, p. 3]

### 3.  June 2006: Parties Reach Settlement Agreement.

The parties attended a resolution session in June 2006, during which an agreement was reached to resolve A.D.'s claims. [Ex. 6]  A final agreement was signed by both parties on August 21, 2006. [Ex. 7]  The parties later found it necessary to revise the earlier settlement agreement and, in August 2007, entered into a new agreement which supplanted the 2006 agreement. [Ex. 8] The August 2007 agreement explicitly resolves all claims which are or could be raised by A.D. against the District "with the limited exception of the claims regarding ASD's discipline policies raised by A.D. in *A.D. v. ASD*, 3:06-CV-138 TMB." *Id.*, at p. 1.

### 4.  June 2006: A.D. Files the Instant Lawsuit Concerning the Same Events.

In June 2006, after he had filed his due process hearing request and reached a tentative settlement of those claims, A.D. filed the instant lawsuit.  The only allegations in Plaintiffs' Amended Complaint which are specific to A.D. are contained in Paragraphs 8 and 17.  Paragraph 8 states that A.D. is eligible for services under the IDEA and Section 504, and "has been repeatedly subject to and adversely affected by the District's Disciplinary Policy during the 2005-2006 school year." [¶ 8]

Paragraph 17 of Plaintiffs' Amended Complaint discusses the same 45-day suspension which was the subject of the Due Process hearing request.[2]  Paragraph 17 alleges that "A.D.'s guardian was unaware that A.D. could be entitled to protections under IDEA or the Section 504

---

[2]     Paragraph 17 incorrectly claims that "A.D. is presently without any educational services." In fact, as A.D. and his counsel are well aware, A.D.'s educational services were restored, including extended school year services and extensive compensatory education, as part of the settlement agreement.  Further, in January 2007, A.D.'s guardian unilaterally withdrew him from the District and enrolled him in a private school. [Ex. 9]

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*                                                                   Page 7 of 18
Case No. 3:06-cv-00138 (TMB)

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

[sic], when he was repeatedly suspended and left without educational services." [¶ 17]  Yet the paragraph goes on to state that A.D.'s guardian requested a due process hearing under IDEA, and that the due process request was ultimately settled. [*Id.*]

### C.    Plaintiff S.T.

Paragraph 9 of Plaintiffs' Amended Complaint states that S.T. "suffers from emotional disabilities and attention deficit hyperactivity disorder," is eligible for services under the IDEA and Section 504, and "has repeatedly been subject to and adversely affected by the District's Disciplinary Policy during the 2005-2006 school year." [¶ 9]

Paragraph 18 alleges that S.T. was repeatedly suspended during the 2005-2006 school year, including an incident for which he was recommended for expulsion for an incident involving "a toy weapon."  [¶ 18]  Paragraph 18 alleges that S.T. was suspended for a total of 70 days during the 2005-2006 school year, and that "S.T.'s IEP team did not meet to discuss [the suspension related to the "toy weapon"] until after it had occurred and S.T. had been administratively placed at Whaley School."  The Complaint does not allege that S.T. made any attempts to exhaust his administrative remedies prior to the lawsuit, nor has he filed any complaint for a due process hearing since the lawsuit.

## III.    APPLICABLE LAW

### A.    Motion to Dismiss

When considering a motion to dismiss filed under Rule 12(b)(1) or (6) FRCP, the court must focus on the allegations in the complaint. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).  Under Rule 12(b)(6), dismissal is proper where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  In deciding a motion to dismiss for failure to exhaust non-



LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)
Page 8 of 18

judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003)(describing a motion to dismiss for failure to exhaust as a "non-enumerated" Rule 12(b) motion).

### B.    Failure to Exhaust Administrative Remedies

Plaintiffs allege that the District has violated the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act.  However, the Ninth Circuit Court of Appeals has repeatedly explained "that plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures." *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1163 (9th Cir. 2007) (*citing Robb v. Bethel Sch. Dist. # 403*, 308 F.3d 1047, 1050 (9th Cir. 2002).

The IDEA is a comprehensive educational scheme that confers on students with disabilities a substantive right to public education. *Id.*, at 1166.  When parents are dissatisfied with "the adequacy of the education provided, or some related matter, [the] IDEA provides procedural recourse." *Id.* (*citing Winkelman v. Parma City Sch. Dist.*, __ U.S. __, 127 S. Ct. 1994, 2000 (2007).  Once a complaint is filed by parents, if the school district cannot resolve the complaint, then the parents are entitled to have "an impartial due process hearing." *Id.*

While parents and disabled students may seek relief for education-related injuries under federal laws other than the IDEA, before they may file a civil action they must first exhaust the IDEA's due process hearing procedure if the action "seek[s] relief that is also available under" the IDEA. *Id.*, at 1167 (*citing* 20 U.S.C. § 1415(*l*)).  Thus, because the plaintiffs in this action "allege injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies," some or all of the claims must be dismissed for their failure to exhaust these prescribed procedures before filing this lawsuit.

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 9 of 18

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

### C.     Res Judicata and Collateral Estoppel

The doctrine of res judicata includes both claim preclusion and issue preclusion. *Fischel v. Equitable Life Assurance Soc'y.*, 307 F.3d 997, 1005 n. 5 (9th Cir. 2002). Claim preclusion prevents parties from relitigating the same claim or cause of action, which includes "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* Issue preclusion, also known as collateral estoppel, "binds parties in a subsequent action, whether on the same or a different claim" when "an issue of fact or law [has been] actually litigated and resolved by a valid final judgment." *Id.* And, in determining the preclusive effect of a state-court judgment, this court must "refer to the preclusion law of the State in which the judgment was rendered." *Diruzza v. County of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003).

In Alaska, under the doctrine of res judicata, a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties about the same cause of action. *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n, Inc.*, 152 P.3d 460, 465 (Alaska 2007). In addition, the doctrine of collateral estoppel applies where (1) the party against whom preclusion is employed was a party to the first action, (2) the issue sought to be precluded is identical to the issue decided in the first action, (3) the issue was resolved in the first action by a final judgment on the merits, and (4) the determination of the issue was essential to the final judgment. *Id.* at 467-8. Finally, the principles of finality may be applied to decisions by administrative agencies if, after case-specific review, the court finds the administrative decision resulted from a procedure that seems an adequate substitute for judicial procedure and it would be fair to accord preclusive effect to the administrative decision. *Id.* at 468.

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 10 of 18

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

## VI.  ARGUMENT

### A. M.H.'s Claims Are Barred by the Settlement Agreement or, Alternatively, by His Failure to Exhaust his Administrative Remedies.

#### 1. M.H.'s claims are barred by the settlement agreement.

On January 22, 2006, M.H.'s guardian filed a Notice of Request for Due Process Hearing regarding M.H.'s discipline and expulsion. [Ex. 2]  The Notice alleged that M.H. had had problems in school since being exited from special education, that M.H. had recently suffered several traumatic brain injuries, that the District did not properly advise M.H. or his guardian of his rights under section 504, that M.H. should not have been expelled, and that M.H. should be receiving special education services.  [*Id.*]  M.H. was represented by Disability Law Center in the due process proceeding that was held before Andrew Lebo, the impartial Hearing Officer.

In the proceedings that followed, M.H. alleged, *inter alia*, that the District had a "basis of knowledge" as to M.H.'s disability prior to his parent's request that he be reevaluated for special education, and that the District violated section 504 by suspending M.H. for 11 days in 2005. [Ex. 1, pp. 13, 21]  M.H. further argued that the placement at the new school was improper, that the manifestation determination was in error, and that M.H. was entitled to compensatory education services.  [*Id.,* p. 13]

On July 10, 2006, Hearing Officer Lebo issued a 31-page order rejecting almost all of M.H.'s claims in the due process proceeding.  Lebo found conclusively that the District did not have knowledge that M.H. was a student entitled to special education services at the time of his offense.  [*Id.,* pp. 8, 25-26]  Lebo further found that it was because of the parent's refusal of services that M.H. instead "stayed at home with Parent and received no educational services until April 24, 2006."  [*Id.,* p. 9]  Lebo upheld the manifestation team's determination of no causality,

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 11 of 18

and upheld the change of location to a new middle school. [*Id.*, pp. 14-16, 17-19]   However, Lebo did find that M.H. was entitled to resume his ASD education one week earlier than he did, and awarded him seven hours of compensatory education. [*Id.*, pp. 27-28, 30]

On August 4, 2006, M.H. filed an appeal of Hearing Officer Lebo's decision in federal district court.  The parties engaged in settlement negotiations and, on April 19, 2007, entered into an agreement to settle all of the claims relating to the due process hearing, and to dismiss the appeal with prejudice.  [Ex. 3]

The doctrines of res judicata or collateral estoppel are both applicable concerning these claims in this lawsuit, given the prior due process hearing, appeal and settlement agreement. Paragraph 7 of the complaint in this action states that M.H. "suffers from traumatic brain injury and related disabilities," is "eligible for services under the IDEA" and Section 504, and "has been repeatedly subject to and adversely affected by the District's Disciplinary Policy during the 2005-2006 school year."  [¶ 7]   Paragraph 16 discusses the same suspensions which were the subject of the Due Process Complaint and Hearing Officer Lebo's Order.   Specifically, Paragraph 16 notes that in 2005, M.H. was not receiving special education services, despite previously having received such services.  [¶ 16]  Paragraph 16 also alleges that during 2005, M.H. was subjected to discipline but was not "protected" by the District's Disciplinary Policy because he was not currently identified as a student with a disability.   Paragraph 16 further alleges that, because of this alleged flaw in the District's Policy, "M.H. was left without educational services from January 3, 2006 to April 24, 2006." [*Id.*]

Thus, the claims raised by M.H. in this lawsuit have been previously submitted to an impartial hearing officer under the due process procedures established by the IDEA.  These are the same claims between the same parties.  After a full and fair hearing, the hearing officer ruled

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 12 of 18

against M.H. on the same claims asserted here. This was a final judgment on the merits in a forum of competent jurisdiction. Thus, the claims in this lawsuit are barred under res judicata by the determination made in that proceeding. Moreover, after that ruling, M.H. filed an appeal but then settled all remaining claims through the settlement agreement. Thus, M.H. is barred from raising these same claims again in this action by the doctrines of res judicata and collateral estoppel.

### 2. **Any claims not barred by the settlement agreement are barred by M.H.'s failure to exhaust administrative remedies.**

To the extent M.H. asserts the claims in this action are different from the claims adjudicated by the hearing officer and settled on appeal, then M.H. has the burden of establishing that there is some proper basis which excuses the duty to exhaust these administrative remedies. Under *Kutasi, supra*, M.H. is not required to exhaust the administrative remedies under the IDEA where "resorting to the administrative process would either be futile or inadequate." 494 F.3d at 1168. If this argument is raised, M.H. bears the burden of proof to show the futility or inadequacy of the administrative procedures. *Id.* However, because the injury claimed here "could be redressed 'to any degree' by the IDEA's administrative procedures – or if the IDEA's ability to remedy an injury is unclear – then exhaustion is required" and is not futile. *Id.* Thus, these claims asserted by M.H. are also barred by the failure to exhaust his administrative remedies under the IDEA.

### B. **A.D.'s Claims Are Barred by the Settlement Agreement or, Alternatively, by His Failure to Exhaust his Administrative Remedies.**

### 1. **A.D.'s settlement agreement provides complete relief for his claims.**

During the 2005-2006 school year, A.D. experienced a number of behavioral problems and was suspended for more than ten school days. On April 3, 2006, A.D. was suspended for

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)                                    Page 13 of 18

swearing at a teacher. [Complaint ¶ 17] On May 24, 2006, A.D.'s guardian, represented by the Disability Law Center, filed a request for an expedited hearing. [Ex. 4][3] The request alleged that the District had violated the IDEA and Section 504 by failing to identify and determine whether A.D. had a disability or an impairment; inadequately evaluating A.D.; not holding a manifestation meeting relating to disciplinary matters; and not taking various steps to ensure that A.D.'s guardian was aware of her procedural rights. [*Id.*, p. 3]

However, at a resolution meeting in June 2006, an agreement was reached to resolve A.D.'s claims. [Ex. 6] A final agreement was signed by both parties on August 21, 2006. [Ex. 7] The parties later found it necessary to revise the earlier settlement agreement and, in August 2007, entered into a new agreement which supplanted the 2006 agreement. [Ex. 8] The August 2007 agreement explicitly resolves all claims which are or could be raised by A.D. against the District "with the limited exception of the claims regarding ASD's discipline policies raised by A.D. in *A.D. v. ASD*, 3:06-CV-138 TMB."

In June 2006, after he had filed his due process hearing request and reached a tentative settlement of those claims, A.D. filed the instant lawsuit. The only allegations in Plaintiffs' Amended Complaint which are specific to A.D. are contained in Paragraphs 8 and 17. Paragraph 8 states that A.D. is eligible for services under the IDEA and Section 504, and "has been repeatedly subject to and adversely affected by the District's Disciplinary Policy during the 2005-2006 school year." [¶ 8]

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

---

[3]     A more detailed request was resubmitted the following day, and is attached hereto as Exhibit 5.

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Paragraph 17 of Plaintiffs' Amended Complaint discusses the same 45-day suspension which was the subject of the Due Process hearing request.[4]  Paragraph 17 alleges that "A.D.'s guardian was unaware that A.D. could be entitled to protections under IDEA or the Section 504 [sic], when he was repeatedly suspended and left without educational services." [¶ 17]  Yet the paragraph goes on to state that A.D.'s guardian requested a due process hearing under IDEA, and that the due process request was ultimately settled. [*Id.*]

Despite the "reservation" made in the settlement agreement, excepting "claims regarding ASD's discipline policies" raised in this lawsuit, A.D. has resolved all his discipline claims through that settlement agreement.  The claims raised in this lawsuit – concerning the 45-day suspension in the 2005-6 school year – are the same claims between the same parties that were resolved in the settlement agreement as part of the due process hearing, a forum of competent jurisdiction under the IDEA.  Thus, A.D. is barred from raising these same claims again in this action by the doctrines of res judicata and collateral estoppel.

### 2.  For those claims not resolved by A.D.'s settlement agreement, A.D. is still required to exhaust his administrative remedies.

To the extent A.D. asserts the claims in this action are different or separate from the claims resolved through the settlement agreement, then A.D. has the burden of establishing that there is some proper basis that excuses the duty to exhaust these administrative remedies.  Under *Kutasi, supra*, A.D. is not required to exhaust the administrative remedies under the IDEA where "resorting to the administrative process would either be futile or inadequate."  494 F.3d at 1168.

---

[4]     Paragraph 17 incorrectly claims that "A.D. is presently without any educational services." In fact, as A.D. and his counsel are well aware, A.D.'s educational services were restored, including extended school year services and extensive compensatory education, as part of the settlement agreement. Further, in January 2007, A.D.'s guardian unilaterally withdrew him from the District and enrolled him in a private school. [Ex. 9]

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*                                    Page 15 of 18
Case No. 3:06-cv-00138 (TMB)

If this argument is raised, A.D. bears the burden of proof to show the futility or inadequacy of the administrative procedures. *Id.* However, because the injury claimed here "could be redressed 'to any degree' by the IDEA's administrative procedures – or if the IDEA's ability to remedy an injury is unclear – then exhaustion is required" and is not futile. *Id.* Thus, these claims asserted by A.D. are also barred by the failure to exhaust his administrative remedies under the IDEA.

### C. S.T.'s Claims Are Barred by His Failure to Exhaust his Administrative Remedies.

Paragraph 9 of Plaintiffs' Amended Complaint states that S.T. "suffers from emotional disabilities and attention deficit hyperactivity disorder," is eligible for services under the IDEA and Section 504, and "has repeatedly been subject to and adversely affected by the District's Disciplinary Policy during the 2005-2006 school year." [¶ 9]

Paragraph 18 alleges that S.T. was repeatedly suspended during the 2005-2006 school year, including an incident for which he was recommended for expulsion for an incident involving "a toy weapon." [¶ 18] Paragraph 18 alleges that S.T. was suspended for a total of 70 days during the 2005-2006 school year, and that "S.T.'s IEP team did not meet to discuss [the suspension related to the "toy weapon"] until after it had occurred and S.T. had been administratively placed at Whaley School."

However, the Complaint does not allege that S.T. made any attempts to exhaust his administrative remedies prior to the lawsuit, nor has he filed any complaint for a due process hearing under the IDEA since the lawsuit was filed. However, S.T. has the burden of establishing that there is some proper basis that excuses the duty to exhaust his administrative remedies. Under *Kutasi, supra*, S.T. is not required to exhaust the administrative remedies under

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 16 of 18

the IDEA where "resorting to the administrative process would either be futile or inadequate." 494 F.3d at 1168. If this argument is raised, S.T. bears the burden of proof to show the futility or inadequacy of the administrative procedures. *Id.* However, it is apparent the injury claimed here "could be redressed 'to any degree' by the IDEA's administrative procedures – or if the IDEA's ability to remedy an injury is unclear – then exhaustion is required" and is not futile. *Id.* Thus, these claims asserted by S.T. are barred by the failure to exhaust his administrative remedies under the IDEA.

## VII.    CONCLUSION

Each of three named plaintiffs in this putative class action is or has been a student within the Anchorage School District, and each does or has received special education services. Each of these students also has been subject to discipline at various times by the District for various offenses, and now claims that the discipline imposed, as well as the discipline policy itself, violate the Individuals with Disabilities Education Act ("IDEA") and/or Section 504 of the Rehabilitation Act ("Section 504"). However, these claims are claims for which exhaustion of remedies is required, or have been resolved on the merits. Therefore, based on the allegations in the Amended Complaint and the arguments presented in this motion, the District respectfully requests this court to dismiss plaintiffs' claims for failure to state any claims for which relief can be granted.

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)

Page 17 of 18

Dated in Anchorage Alaska this 25th day of January 2008.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Anchorage School District


By: /s/ Bradley D. Owens
       Bradley D. Owens
       Jermain Dunnagan & Owens, P.C.
       3000 A Street, Suite 300
       Anchorage, AK  99503
       Telephone: (907) 563-8844
       Facsimile: (907) 563-7322
       bradowens@jdolaw.com
       Alaska Bar #7610122

       /s/ Cheryl Mandala
       Cheryl Mandala
       Jermain Dunnagan & Owens, P.C.
       3000 A Street, Suite 300
       Anchorage, AK  99503
       Telephone: (907) 563-8844
       Facsimile: (907) 563-7322
       cmandala@jdolaw.com
       Alaska Bar #0605019

Certificate of Service

This is to certify that on this 25th day of
January 2008, a true and correct copy of the
foregoing was electronically mailed to:

Meg K. Allison
mallison@dlcak.org


/s/ Bradley D. Owens

3227.1186 - 171991

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Memorandum in Support of Motion to Dismiss
*M.H. et al. v. Anchorage School District*
Case No. 3:06-cv-00138 (TMB)