Meg K. Allison (AK Bar No. 0511091)
Jacob Kammermeyer, Esq. (AK Bar No. 0506043)
DISABILITY LAW CENTER of ALASKA
3330 Arctic Blvd., Ste. 103
Anchorage, AK   99503
Telephone: (907) 565-1002
Fax: (907) 565-1000
mallison@dlcak.org
jakekammermeyer@yahoo.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| M.H., by his legal guardian, L.P.;<br>A.D. by his legal guardian, J.N., and<br>S.T. by his legal guardian, A.T., on<br>Behalf of themselves and All Others<br>Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>Anchorage School District,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br>Case No. 3:06-cv-00138<br><br><br>**Class Action** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Students' putative class action challenges the legality of the Anchorage School District's disciplinary policy and procedures as applied to children with disabilities.  The District now moves to dismiss Students' complaint on the bases of exhaustion and res judicata.  Students, however, sufficiently exhausted their administrative remedies under the IDEA and obtained relief to the extent that it was available under these procedures.  Moreover, all of Students' claims may be decided as a matter of law, and the District has

*M.H. et al. v. Anchorage School District*                                    Page 1 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

been afforded adequate notice and opportunity to cure the defects identified in Students' complaint. Further exhaustion is therefore not required. In addition, Students' claims are not precluded by prior administrative proceedings or settlement agreements derived therefrom. Students' requests for due process and subsequent resolutions address only those educational issues implicated by their own disabilities. Students' current action seeks broad systemic relief, which hearing officers lack jurisdiction to order. This Court is uniquely situated to address the concerns Students properly bring before it. Accordingly, the District's motion to dismiss should be denied.

## ARGUMENT

## I.    THE DISTRICT'S MOTION TO DISMISS IS A MOTION FOR SUMMARY JUDGMENT

### A.  Motion to Dismiss Standard

The District moves this Court for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Docket No. 36, pg. 8.

For purposes of the 12(b) motion regarding exhaustion of administrative remedies, "dismissal of an action on the ground of failure to exhaust is not on the merits." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide issues of disputed fact. *Ritza v. Longeshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988).

Conversely, for the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir.1994). A complaint should not be dismissed "unless it appears beyond doubt that

*M.H. et al. v. Anchorage School District*                                                        Page 2 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989) (further citations omitted)). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.* However, to the extent that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990).

In this instance, the District's motion to dismiss goes well beyond the complaint filed. *See* Docket No. 36. The District submitted nine exhibits in support of the contentions in its motion to dismiss. *Id.* Therefore, the present motion before the Court should be converted to a motion for summary judgment as to its claims that Students raise are precluded and that they have failed to state a claim. Thus to the extent that the District relies on documents outside of the complaint for any of its arguments other than exhaustion of administrative remedies, those contentions should be decided under the summary judgment standard.

### B.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

*M.H. et al. v. Anchorage School District*                                                                Page 3 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

The initial burden is on the moving party to demonstrate that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a showing sufficient to establish the existence of an element, which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To demonstrate a genuine issue, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. (internal citation omitted). As discussed below, there are several key issues of material fact in this case, which prohibit the District from obtaining judgment as a matter of law that the claims of Students M.H. and A.D. are precluded. *See infra*, pgs. 18-21.

## II.    EXHAUSTION

Students' proposed class action primarily seeks enjoinment and revision of the District's discipline policy and practices. Docket No. 7, pg. 13. Broadly, Students allege that the District's discipline policy and practices violate the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1400 et seq., and federal and state laws enacted pursuant thereto, as well as Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *Id.* Students allege the District's policy is impermissible both on its face and as applied. *Id.*

*M.H. et al. v. Anchorage School District*                                                                 Page 4 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

All of the Students here were subjected to the District's discipline policy and practices; and M.H. and S.T. (as well as all other children with disabilities within the District) are subject to it still.[1]  Previously, M.H. and A.D. requested due process hearings concerning actions taken by the District under its discipline policy and practices.  In each of their cases, M.H. and A.D. were able to successfully resolve the educational issues implicated by their disabilities by means of settlement agreements with the District. Importantly, these agreements allowed the students to return to school, but left open the questions of whether the District's discipline policy and practices are contrary to law. *See also* Docket Nos. 36-9, 36-10.

Thus under the facts of this case and with regard to Students' actual claims, further exhaustion of administrative remedies under the IDEA is not required for this Court to properly exercise jurisdiction over this matter.  M.H. and A.D. have sufficiently exhausted their administrative remedies by filing for due process and resolving all educational issues related to their disabilities and individual educational rights. Moreover, Students are not required to exhaust additional administrative remedies (to the extent that such procedures may be required) because they challenge a policy of general applicability as contrary to law, and the District has been accorded notice and an opportunity to cure.  Finally, as this case is a putative class action, all Plaintiffs are not required to exhaust their administrative remedies before this case may move forward. Accordingly, the fact that S.T. has not requested due process is immaterial: he too challenges the validity of the District's discipline policy and practices, and his claims are

---

[1]  Plaintiff A.D. no longer attends school within the District.

*M.H. et al. v. Anchorage School District*                                    Page 5 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

representative of the class of which he is a part. As detailed below, the District's blanket assertion that Students' claims are barred by the IDEA's exhaustion doctrine is not only unfounded, but is also not supported by law.

### A. M.H. and A.D. Have Exhausted their Administrative Remedies under the IDEA

Plaintiffs are all students with disabilities who are eligible for and receive special education and related services under the IDEA. The IDEA was enacted to ensure that children with disabilities, such as Plaintiffs, receive a free appropriate public education ("FAPE"). 20 U.S.C. § 1401(a)(9). In drafting this legislation, Congress recognized that meeting the needs of children with a myriad of disabilities and unique challenges will often require educational agencies to make individual decisions based on very specific factual inquiries. *Id*. Thus, the IDEA and federal regulations adopted pursuant thereto provide several administrative remedies to deal with disputes regarding these decisions. *See* 20 U.S.C. § 1415; 34 CFR § 300.151-.153; and 34 CFR § 300.507-.515.

In Alaska, parents of a child with a disability may request a due process hearing before an impartial hearing officer. *See* AS 14.30.193; and 4 AAC 52.550. It is important to note, however, that a hearing officer's jurisdiction extends only to issues particular to an individual child: a hearing officer does not have jurisdiction to address policies of general applicability, he or she may only uphold or overturn decisions related to a specific child. *See* AS 14.30.193(a) ("A school district or a parent of a child with a disability may request a due process hearing on any issue related to identification, evaluation, or educational placement of the child, or the provision of a free, appropriate, public education to the child."); and AS 14.30.193(d) ("After the hearing is completed,

*M.H. et al. v. Anchorage School District*                                                    Page 6 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

the hearing officer shall issue a written decision that (1) upholds the school district's decision; or (2) overturns the school district's decision with specific instructions for modification of the identification, evaluation, educational placement, or provision of the education program by the district.").

Parents aggrieved by the result of a due process hearing may appeal the decision in either state or federal court. *See* AS 14.30.193(f); and 20 U.S.C. §1415(i). This is how most IDEA claimants find themselves before a judge. In addition, exhaustion of administrative remedies is also generally required before parents may file an action against an educational agency based on violations of other federal or state laws, or to obtain relief unavailable through the IDEA's administrative remedies. *See, e.g., Christopher S. v. Stanislaus County Office of Education*, 384 F.3d 1205, 1207 (9th Cir. 2004) (IDEA exhaustion analysis in the context of claims brought under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and state anti-discrimination statutes).

Here, the parents of M.H. and A.D. requested due process hearings regarding specific actions taken by the District against their children pursuant to its discipline policy and practices. *See* Docket Nos. 36-4, 36-6 and 36-7; Affidavit of Allison, Ex. A. Both of these requests ultimately resulted in settlement agreements that resolved the educational issues associated with the individual child's disabilities and individual educational rights to the parties' mutual satisfaction. *See* Docket Nos. 36-5, 36-9 and 36-10. These agreements did not, however, resolve all potential claims—only those claims related to each child's individual educational needs, which were properly before the respective hearing officers and for which the hearing officers could have accorded relief.

*M.H. et al. v. Anchorage School District*                                                    Page 7 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

*See infra*, pg. 19.  Thus, M.H. and A.D. have exhausted the appropriate administrative remedies available to them under the IDEA, and may now challenge the District's discipline policy and practices as contrary to law.  Put another way, the educational issues unique to each student as related to their disabilities have been resolved, and litigation may now proceed concerning the District's policy and practices of general applicability.

The District, however, relying heavily on the Ninth Circuit Court of Appeals' decision in *Kutasi v. Las Virgenes Unified School District*, 494 F.3d 1162 (9th Cir. 2007), asserts that further exhaustion is required here.  Docket No. 36, pg. 9.  The District's mantra is basically that Students must exhaust administrative remedies to the extent that their issues may be redressed by the IDEA's administrative procedures.  *Id.* Unfortunately, by relying on quotations instead of context, the District fails to see that Students have in fact done exactly what it now proposes they must do—i.e. M.H. and A.D. have obtained individual relief to the extent that they could through the IDEA's administrative remedies, and having done so this Court may address the remaining systemic issues, matters that are pointedly outside the purview of a hearing officer.  According to Ninth Circuit precedent, nothing more is required.

The District's reliance on *Kutasi* while misdirected is not entirely without value.  The Court of Appeals in that case makes clear that in circumstances where the educational issues particular to a child's disability have been resolved through the IDEA's administrative remedies, further exhaustion is not required in order to litigate claims for which relief cannot be obtained via administrative procedures.  *Kutasi*, 494 F.3d at 1168.  The Ninth Circuit's analysis is a practical one: courts should not exercise jurisdiction over IDEA and related matters until the individual educational issues have

*M.H. et al. v. Anchorage School District*                                                                 Page 8 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

been resolved to the extent possible. *Id.* The present matter is on all fours with this analysis.

Here, M.H. and A.D. have resolved the educational issues associated with their individual disabilities and have obtained the relief available to them under the IDEA's administrative procedures. Moreover, the District fails to articulate what additional steps Students must take or exactly what kind of relief they must obtain before litigation may proceed. Students have obtained all the relief that administrative remedies can give, therefore further exhaustion is not required. They are not required to exhaust every single issue, just those for which a hearing officer could accord relief. Only the courts may enjoin the District's discipline policy and practices. Only the courts may order its revision. And only the courts may award compensation to Plaintiffs under Section 504 of the Rehabilitation Act. It is time to allow Students to proceed.

**B.    The IDEA's Exhaustion Requirement is Not Absolute**

To the extent that the Court may find that Students have not sufficiently exhausted the administrative remedies available to them under the IDEA, they are still not required to exhaust additional procedures because Students challenge the legality of the District's discipline policy and procedures, which the District has already been afforded ample time to bring into compliance with federal law. Resolution of Students' claims is purely a matter of law, and the purposes of exhaustion would not be furthered by requiring additional proceedings. Accordingly, further exhaustion is unnecessary under the IDEA.

"The IDEA's exhaustion requirement is not absolute... for there are situations in which exhaustion serves no useful purpose. Courts universally recognize that parents

*M.H. et al. v. Anchorage School District*                                                                Page 9 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

need not exhaust the procedures set forth in 20 U.S.C. §1415 where resort to the administrative process would be either futile or inadequate." *Hoeft v. Tucson*, 967 F.2d 1298, 1303 (9th Cir. 1992). In addition, the Ninth Circuit Court of Appeals recognizes a third exception to the exhaustion requirement where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to law." *Id.* at 1303-1304 (citing H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). Under this third exception, waiver of the IDEA's exhaustion requirement is appropriate if "the underlying purpose[s] of exhaustion would not be furthered by enforcing the requirement." *Id.* at 1304. These purposes include:

> the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, [further] development of a complete factual record, and… judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Id.* at 1303 (emphasis added).

When policies or practices of general applicability are at issue, agency expertise and development of a factual record are unnecessary because determining their validity is purely a legal question. *Id.* at 1305. However, even if the disposition of a plaintiff's claims may be decided as a matter of law, "affording the agency an opportunity to consider and fix errors" may still be an important interest served by the exhaustion requirement. *Id.* at 1307; and *see Christopher S.*, 384 F.3d at 1213 (9th Cir. 2004).

In this instance, Students challenge the suspension of students with disabilities and subsequent cessation of their educational services for more than 10 school days by the District in accordance with its discipline policy and practices as violations of the IDEA and Section 504 of the Rehabilitation Act. Docket No. 7, pg. 4-5. Students also

*M.H. et al. v. Anchorage School District*                                          Page 10 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

challenge the District's unilateral change of placement and failure to provide a continuum of placement options to children with disabilities subject to discipline by the District. *Id.* As alleged, these policies and practices are both facially invalid and contrary to the law as applied. Specialized educational expertise is therefore not required to determine their permissibility; nor would additional administrative records be illuminating. Thus further exhaustion is unnecessary if the District has been afforded the opportunity to fix the alleged problems. At this point, the District has had more than enough time to bring its policy and practices into compliance with federal law.

As explained earlier, M.H. and A.D. requested due process hearings regarding inappropriate disciplinary actions by the District. Though they took entirely different paths, both of these requests for due process ultimately resulted in settlement agreements. Moreover, after Students filed the current action, the parties participated in extensive mediation in an effort to address Students' concerns without the need for prolonged litigation. Unfortunately, after months of negotiations[2], during which time all proceedings were effectively stayed, litigation recommenced. Accordingly, the District has received ample notice of the defects in its discipline policy and practices identified by Students in their complaint, and the District has been given more than enough time to address these issues. Students aver that the District's discipline policy and practices continue to violate the IDEA and Section 504 of the Rehabilitation Act. Consequently, further exhaustion is not required here.

---

[2] *See* Docket No. 3.

*M.H. et al. v. Anchorage School District*                                    Page 11 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

### C.    Exhaustion is Not Required of Every Class Member

Students do not purport that they are excused from the exhaustion requirement of the IDEA because their lawsuit is a putative class action.  Nevertheless, Students strongly disagree with the District's assertion that all named plaintiffs are required to exhaust the administrative remedies available to them under the IDEA.  *See* Docket No. 36, pg. 16.  Specifically, the District argues that S.T.'s claims are "barred" because he has not exhausted the IDEA's administrative procedures.  *Id.*  Yet, as argued above, M.H. and A.D. have sufficiently exhausted their administrative remedies, and S.T. is a member of the class on whose behalf this civil action was filed.  Certainly exhaustion may be required of some representative plaintiffs, but it is not required of all.

"The legislative history does suggest that the IDEA's exhaustion requirement applies differently to class actions than to suits brought by individuals, inasmuch as *each* class member need not exhaust before a suit is brought.  *Hoeft*, 967 F.2d at 1309 (citing 121 Cong.Rec. 37,416 (1975) (remarks of Sen. Harrison Williams)) (emphasis in the opinion).  According to the Ninth Circuit, so long as a representative plaintiff has sufficiently exhausted his or her administrative remedies or been excused from this requirement, exhaustion is not required of every class member.  *Id.; and see, also, Christopher S.*, 384 F.3d at 1208 (action brought by three autistic children allowed to continue even though only one of the student's parents had filed an administrative complaint and been excused from further exhaustion).  Such is the case here, and therefore S.T. need not exhaust for his claims to move forward.

*M.H. et al. v. Anchorage School District*                                                              Page 12 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

### III.     STUDENTS ARE NOT PRECLUDED FROM BRINGING THE PRESENT ACTION

Rather than using the terms "res judicata" and "collateral estoppel," the Supreme Court generally uses the terms "claim preclusion" and "issue preclusion." *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892 (1984). "Claim preclusion" refers to the preclusive effect of a judgment in foreclosing relitigation of claims that were raised or should have been raised in earlier litigation, and "issue preclusion" refers to the preclusive effect of a judgment in foreclosing relitigation of issues that have been actually and necessarily decided in earlier litigation. *See id.* In the Ninth Circuit, "when a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," the federal courts must give an administrative agency's fact finding the same preclusive effect to which it would be entitled in the State courts. *Wehrli v.County of Orange*, 175 F.3d 692, 694 (9th Cir. 1999) (quoting *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422 (1966)) (internal quotations omitted). This same principle applies to legal as well as factual rulings of an administrative body. *Miller v. County of Santa Cruz,* 39 F.3d 1030, 1032-33 (9th Cir.1994).

The District argues that the Court must look to Alaska state law on the doctrine of res judicata. Docket No. 36, pg. 10. While Students agree Alaska state law is applicable, the District's application of the controlling case law to the present action is incorrect.

*M.H. et al. v. Anchorage School District*                                                                 Page 13 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

A.    **M.H. and A.D.'s IDEA Claims are Not Precluded**

1.    **M.H. and A.D.'s claims in this litigation are different from those raised in their administrative due process hearing requests.**

The District relies on the four-part test articulated by the Alaska Supreme Court in

*Matanuska Electric Association v. Chugach Electric Association, Inc.*, 152 P.3d 460, 466

(Alaska 2007) for its res judicata analysis. Docket No. 36, pg. 10. However, the District

fails to properly apply this test to the instant case before this Court. Part two of the

*Matanuska Electric* test is that "the issue sought to be precluded is identical to the issue

decided in the first action." 152 P.3d at 467-8. In reviewing M.H.'s request for due

process, the District goes through a recitation of the hearing officer's factual findings, but

fails to analyze the claims asserted by M.H. in his due process notice and amended

notice.[3]

M.H.'s request for due process specifically raised the issues of M.H.'s eligibility

for special education under the IDEA and/or Section 504. Docket 36-4. In his amended

notice, M.H. more clearly set forth the claims he was raising and the relief he sought

from the District. Affidavit of Allison, Ex. A. M.H. set forth seven specific claims or

violations.[4]  *Id.*  Each of these claims dealt with M.H.'s individual disability and his right

---

[3] While ASD includes M.H.'s original notice for a due process hearing (Docket No. 36-4), it does not include the amended due process notice that was filed once M.H. retained the Disability Law Center as counsel. *See* Affidavit of Meg Allison, Ex. A.

[4] The following issues were raised in M.H.'s amended due process notice: 1. Failure to child find, identify promptly and determine whether or not Myles has a disability, including but not limited to emotional disturbance, TBI and learning disabilities; 2. Failure to fully evaluate Myles for all potential disabilities previously when denying Myles special education eligibility; 3. The ASD did not comply with the procedural requirements of the IDEA to ensure that Myles' mother was fully aware of all of her procedural rights; 4. Failure to provide Myles' mother with notice of rights under Section 504 at any time; 5. Failure to hold any meeting after any disciplinary matters to determine under Section 504 any relationship between the disability and such incidents; 6. Failure to clearly indicate the length of Myles' suspension with respect to incidents at school that lead to ASD's seeking to expel Myles; and 7. Failure to notify the parents of their

*M.H. et al. v. Anchorage School District*                                          Page 14 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

to a free appropriate public education under the IDEA.  *See* Docket 36-4 and Affidavit of Allison, Ex. A.  The claims raised in this litigation on the other hand are significantly different.  The violation of the IDEA raised in this action concerns the District's discipline policy and practices as applied to all children with disabilities.  The Ninth Circuit is clear that there is a significant difference between claims raising individual issues of FAPE and issues concerning policies and practices of general applicability.  *Compare Hoeft*, 967 F.2d 1298; to *Christopher S.*, 384 F.3d 1205.

Moreover, with regard to the factual findings of the hearing officer in M.H.'s due process hearing, application of the factual findings does not have preclusive effect where the claims under analysis were not the same as those raised now.  Further, the facts presented by the parties in the administrative hearing addressed the issues raised in M.H.'s due process notice.  Therefore, the District's reliance on the hearing officer's factual findings and nothing more is misplaced.

The same analysis of part two of the four-part *Matanuska Electric* test applies to the District's assertion that A.D.'s claims are precluded.  Once again, the District fails to compare the claims raised by A.D. in his due process notice to those raised by Students in the present lawsuit.  Specifically, in his request for due process, A.D. raised eight claims all involving his individual disability and his rights to a free appropriate public education under the IDEA; not a facial challenge to the District's discipline policy or general practices thereunder.  *Compare* Docket Nos. 36-6 and 36-7 to Docket No. 7, pg. 9.

---

specific rights to contest disciplinary action through the due process system and specifically of their right to an expedited hearing before Myles' placement was "changed."  *See* Affidavit of Allison, Ex. A.

*M.H. et al. v. Anchorage School District*                                                                 Page 15 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

The issues raised by M.H. and A.D. in their due process hearing requests and the present action are not identical. Therefore, this action should proceed.

> ### 2.    The administrative hearing officer did not have jurisdiction over the claims now asserted by M.H. and A.D.

The District's analysis of the Alaska standard for res judicata or claim preclusion falls short because it fails to articulate or apply the controlling case law accurately in the context of the matter before this Court. In *Matanuska Electric Association v. Chugach Electric Association, Inc.*, 152 P.3d 460, 466 (Alaska 2007) the Supreme Court of Alaska relying on the Restatement (Second) of Judgments, section 83(3) held that "[a]n adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim." The court goes on to reference the comments of the Restatement stating that

> [T]he jurisdiction of administrative agencies is usually defined in terms of specified substantive legal provisions…Since the tribunal's authority is delimited in substantive legal terms, the tribunal ordinarily lacks authority to adjudicate claims arising out of the transaction in question but based upon other substantive legal premises. … These limitations on authority of the tribunal should carry corresponding limitations on the scope of 'claim' for purposes of the rule of claim preclusion.

*Id*. (citing Restatement (Second) of Judgments, § 83 cmt. g.).

In *Matanuska Electric*, the court analyzed the jurisdiction of the Regulatory Commission in light of the claims brought in the state court litigation. *Id*. at 466-467. In analyzing the jurisdiction of the Regulatory Commission, the court looked directly at the statutory grant of jurisdiction. *Id*. at 467. Ultimately, the court concluded that because

*M.H. et al. v. Anchorage School District*                                                    Page 16 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

Matanuska Electric sought remedies in state superior court over which the Regulatory Commission did not have jurisdiction to provide relief, its claims were not precluded.

The present action is analogous to the *Matanuska Electric* because special education due process hearing officers have limited jurisdiction, like the Regulatory Commission, to hear only individual educational issues and may not address the systemic relief requested in this litigation. *Id.* As explained above, in Alaska a special education due process hearing officer's jurisdiction is controlled by AS 14.30.193(a). Significantly, AS 14.30.193(a) provides that "a parent of a child with a disability may request a due process hearing on *any issue related to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education to the child.*" (emphasis added). Students' present action challenges the District's discipline policy and practices as invalid on its face and as applied to all children eligible for special education and related services under the IDEA and/or Section 504 services. This challenge does not concern any of the areas in which a hearing officer has jurisdiction. *See Hoeft*, 967 F.2d 1298.

Moreover, the relief requested by Students in their amended complaint is systemic in nature. Docket No. 7, pg. 10-11. Specifically, the Students request:

A.    The Court take jurisdiction and enjoin the use of the District's Disciplinary Policy as against any students who are identified as having a disability or who have previously been identified as having a disability within the last two years, and

B.    Order the revision of the District's Disciplinary Policy consistent with the IDEA and Section 504.

C.    Correct the disciplinary records of all affected students.

D.    Order training in special education and Section 504 with regard to the identification of students with disabilities and the procedural rights of students with disabilities pursuant to the IDEA and Section 504 for all regular education staff, including

*M.H. et al. v. Anchorage School District*                                    Page 17 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

superintendents, assistant superintendents, principals, vice principals, counselors, and others who have any authority to discipline students.

E.    Enjoin the District from using the District's Disciplinary Policy in a manner inconsistent with the IDEA and Section 504, regardless of what the policy or training requires, and institute monitoring by the Court for a period of not less than 3 years to assure the proper implementation of disciplinary measures to students with disabilities.

F.    Such other relief as is necessary under the circumstances, including where necessary appropriate compensatory services for affected Plaintiffs.

*Id*.    Given the limited jurisdictional grant to special education due process hearing officers in Alaska—they may only uphold or overturn decisions with respect to individual children—the relief requested by Students is unavailable through an administrative proceeding.

With regard to M.H.'s claims in particular, the District argues that the claims raised by M.H. have been previously submitted to an impartial hearing officer through the due process procedures under the IDEA. Docket No. 36, pg. 12. However, what the District fails to recognize is that even if the same claims may have been raised, the hearing officer would have been unable to grant M.H. the type of relief requested in the instant action. *See supra*.

Finally, because the challenge involves all students eligible to receive special education and Section 504 services, a hearing officer would not have jurisdiction since the statute clearly limits hearing officer jurisdiction to issues concerning a single child. AS 14.30.193(a). Disposition of this case, with over 10,000 potential plaintiffs, would thus require multiple hearings if a hearing officer did have jurisdiction over the claims asserted.

*M.H. et al. v. Anchorage School District*                                    Page 18 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

**B.    M.H. and A.D.'s Settlement Agreements do Not Bar this Action**

Settlement or adjudication of M.H.'s claims regarding his disability and his right to a free appropriate public education under the IDEA only makes sense in light of the requirement that he must first exhaust administrative remedies before pursuing further relief from the courts. *See supra*, pg. 4. By settling his own individual claims, M.H. is not now barred from bringing those claims raised in this action. The District argues that the execution of the settlement agreement settled all claims M.H. had through the date of the settlement agreement. Docket No. 36, pg. 13. However, the facts do not support this contention. Examination of the settlement agreement reveals that it explicitly concerns only those issues M.H. had raised in a separate federal court case, 3:06cv180(TMB), which was brought as an appeal of the administrative decision issued by the due process hearing officer. Docket No. 36-5. Moreover, the District's contention does not make sense in light of the terms of the agreement. The terms of the agreement specifically redress M.H.'s claims that he had been denied a free appropriate public education. *Id.* None of the terms of the settlement agreement address the District's discipline policy or practices, the claims raised in this action. Finally, at the time the parties executed this settlement agreement, the present action was underway and the District was aware of the action. Docket No. 1 (June 7, 2006) and Docket No. 3 (August 4, 2006) (unopposed motion for extension of time served on ASD). Because the parties do not agree on the scope of the settlement agreement and its impact on the claims asserted in this action, ASD's motion must be denied. *See* Fed.R.Civ.P. 56(c).

A.D.'s individual IDEA claims are similar to M.H.'s claims. A.D., like M.H., pursued his administrative remedies as is required under the IDEA, but instead of a final

*M.H. et al. v. Anchorage School District*                                    Page 19 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

hearing officer decision, A.D. and the District were able to settle the claims raised in his due process notice. *See* Docket Nos. 36-9 and 36-10. The District argues that the claims in the present action are barred by the release contained in the resolution agreements. Docket No. 36, pg. 15. The Court must analyze the District's contention under Rule 12(b)(6), not Rule 12(b)(1). *See R.K. v. Hayward Unified Sch. Dist.*, 2007 WL 2778702, 6 (N.D. Cal. Sep. 21, 2007) (citing *Stephen H. v. West Contra Costa Cnty. Unif. Sch. Dist.,* 2007 WL 1557482, 1 (N.D.Cal. May 29, 2007) (holding that a release does not eliminate federal jurisdiction, but rather is merely an affirmative defense which is reviewed pursuant to Rule 12(b)(6)). As stated previously, the District's present motion to dismiss under Rule 12(b)(6) is more properly a motion for summary judgment. *See supra*, pg. 2. In order to prevail on the motion for summary judgment, ASD must show that there are no issues of material fact as to the meaning of the release in the resolution agreements. *Id*. However, significant issues of material fact exist regarding the extent to which A.D. released the District of liability and whether that release extended to the claims asserted in the present litigation.

The District also relies on the factual allegations raised by A.D. in the amended complaint, specifically that he received a 45 day suspension during the 2005-2006 school year. Docket No. 36, pg. 15. However, the District fails to examine the difference in the legal claims brought by A.D. in his notice of due process and the instant action. This distinction is important because the types of claims brought in this action—i.e. the

*M.H. et al. v. Anchorage School District*                                    Page 20 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

validity of the District's discipline policy and practices—were not addressed or remedied by the resolution agreements.  Docket No. 36-9 and 36-10.[5]

Additionally, the term resolution agreement is a term of art derived from the IDEA.  The IDEA requires a resolution session be held once a student has filed a notice of due process.  20 U.S.C. § 1415(f)(1)(B).  The resolution session is "a meeting with the parents and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the [due process notice]."  20 U.S.C. § 1415(f)(1)(B)(i).  "In the case that resolution is reached to resolve the [due process notice] at the [resolution] meeting, the parties shall execute a legally binding agreement." *Id*. at (iii).  Therefore, the issues redressed by the resolution agreement are limited to those raised by A.D. in his due process notice.  *See* Docket Nos. 36-6 and 36-7.

**C.    Section 504**

While the District argues that M.H. and A.D. have resolved all claims for which they exhausted their administrative remedies, it fails to address the Section 504 claim asserted by Students.  *See* Docket No. 7, pg. 10.  Because the District has not moved for dismissal of Students' Section 504 claims, these claims should be allowed to go forward. Specifically, Students assert in their amended complaint that "The District's Disciplinary

---

[5] The eight enumerated issues in the due process notice were: 1. Failure to child find, identify promptly and determine whether or not Anthony has a disability, including but not limited to emotional disturbance, developmental disability, learning disabilities; 2. Failure to fully evaluate Anthony for all potential disabilities previously when denying Anthony special education eligibility; 3. Failure to issue a prior written notice consistent with the IDEA in denying Anthony eligibility for IDEA; 4. Failure to child find, identify promptly and determine whether or not Anthony has an impairment under Section 504; 5. The ASD did not comply with the procedural requirements of the IDEA to ensure that Anthony's aunt was fully aware of all of her procedural rights; 6. Failure to provide Anthony's aunt with notice of rights under Section 504 at any time; 7. Failure to hold any meeting after any disciplinary matters to determine under Section 504 any relationship between the disability and such incidents; and 8. Failure to notify the parents of their specific rights to contest disciplinary action through the due process system and specifically of their right to an expedited hearing before Anthony's placement was "changed".  Docket No. 36-7, pg. 3.

*M.H. et al. v. Anchorage School District*                                          Page 21 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

Policy violates Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. 794, and regulations thereto. Or, in the alternative, that if the policy is written in a manner consistent with Section 504, that the policy is implemented in a manner contrary to Section 504." *Id.*

The Ninth Circuit recently held that the availability of relief under the IDEA would not limit the availability of damages under Section 504 of the Rehabilitation Act, which requires that individuals with disabilities not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal funds for failure to provide FAPE independently required by Section 504. *Mark H. v. Lemahieu*, 2008 WL 151280, pg. 8 (9th Cir. 2008). The court stated,

> FAPE under the IDEA and FAPE as identified in the § 504 regulations are similar but not identical. When [the Department of Education] promulgated its § 504 regulations, the U.S. DOE described them as '*generally* conform[ing] to the standards established for the education of handicapped persons in…[the] IDEA.' Although overlapping in some respects, the two requirements contain significant differences.

*Id.*

Importantly, Congress intended that remedies be available under Section 504 for acts that also violate the IDEA by adding to the IDEA what is now 20 U.S.C. § 1415( l ), which provides

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

*M.H. et al. v. Anchorage School District*                                              Page 22 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

This provision overrode the Supreme Court's holding in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457 (1984), which held that the "remedies, rights, and procedures" available under the IDEA were the exclusive relief for failure to provide a FAPE, so that remedies under Title V of the Rehabilitation Act, including payment of a prevailing party's attorney's fees, were unavailable." *Mark H.*, 2008 WL 151280, *9 (quoting *Smith*, 468 U.S. 992, 1019).

Therefore, even if the Court finds that Students are precluded from pursuing their IDEA related claims, it should still find that they may continue to pursue their claims under Section 504.

## CONCLUSION

Based on the foregoing, this litigation should be allowed to proceed.[6]  Students have sufficiently exhausted their administrative remedies under the IDEA, and additional procedures are unnecessary based on the facts and nature of Students' claims. Furthermore, Students' claims and triable issues are not precluded by the prior administrative proceedings or subsequent settlement agreements.  Accordingly, the District's Motion to Dismiss should be denied.

Respectfully submitted February 29, 2008.

/s/ Meg K. Allison
Meg K. Allison (AK Bar No. 0511091)
Jacob Kammermeyer (AK Bar No0506043)
DISABILITY LAW CENTER of ALASKA
3330 Arctic Blvd., Ste. 103
Anchorage, AK  99503
Telephone: (907) 565-1002

---

[6] If the Court finds that any or all of the named individuals in this action are unable to proceed, Students respectfully request leave to substitute other class members as named plaintiffs.  *See* Fed. R. Civ. Pro. 15.

*M.H. et al. v. Anchorage School District*                    Page 23 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)

Fax: (907) 565-1000
Email: mallison@dlcak.org
       jakekammermeyer@yahoo.com

Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2008
A copy of the foregoing document was served
Electronically via ECF on:

Brad Owens
bradowens@jdolaw.com

_/s/ Meg K. Allison_____
Meg K. Allison

*M.H. et al. v. Anchorage School District*    Page 24 of 24
Plaintiffs' Opposition to Defendant's Motion to Dismiss
3:06-cv-00138 (TMB)