**48 IDELR 253**

107 LRP 57643

**R.K., a minor, by and through his parents, T.K. and C.K., Plaintiff, v. HAYWARD UNIFIED SCHOOL DISTRICT, et al., Defendants.**

**U.S. District Court, Northern District of California**

C 06-07836 JSW

**September 21, 2007**

**Related Index Numbers**

**190.020 Exhaustion Required**

**370.060 Jurisdiction**

**390.013 Due Process Hearings**

**Judge / Administrative Officer**

JEFFREY S. WHITE

See related decision reported at 48 IDELR 210

**Case Summary**

A student with Asperger syndrome could not sue a California district for its alleged breach of a FAPE settlement. Noting that the student had not exhausted his administrative remedies, the District Court concluded that it lacked jurisdiction over the dispute. It was the settlement's connection to the student's special education services that doomed the student's claim. The court pointed out that the specific purpose of the settlement was to resolve a dispute regarding the student's services and placement. Although the student reached an agreement with the district, the court explained that the settlement was not a substitute for an administrative proceeding. "Several other courts have considered this issue and held that exhaustion is required for claims concerning breaches of agreements settling due process complaints, especially where the alleged breach relates to the student's receipt of FAPE," U.S. District Judge Jeffrey S. White wrote. The court acknowledged that the student filed a due process complaint against the district shortly after the alleged breach occurred. However, because the student withdrew his complaint before the matter was resolved, he did not satisfy the IDEA's exhaustion requirement. The court dismissed the student's breach of settlement action for lack of jurisdiction.

**Full Text**

**Appearances:**

APPEARANCES:

For R.K, a minor, by and through his parents, T.K. and C.K., Plaintiff: Mandy G. Leigh, LEAD ATTORNEY, Sarah J. Fairchild, Leigh Law Group, San Francisco, CA.

For Hayward Unified School District, Valerie Baugh, in her individual capacity, Defendants: Kimberly Anne Smith, LEAD ATTORNEY, Fagen Friedman & Fulfrost, LLP, Oakland, CA.

For California Department of Education, Defendant: Gabriel Cruz Vivas, LEAD ATTORNEY, California Dept. of Education, Sacramento, CA.

For Children's Health Council, a corporation also doing business as, Defendant: Barbara Ann E. Caulfield, LEAD ATTORNEY, Gordon & Rees LLP, San Francisco, CA; Carol L. Healey, LEAD ATTORNEY, Bishop Barry Howe Haney & Ryder, Emeryville, CA.

For Alameda County Behavior Health Care Services, Carolyn Novesel, in her official capacity as a Director for Children's System of Care a division of Alameda County Behavioral Services, Defendants: Todd Alexander Boley, LEAD ATTORNEY, Erickson Beasley & Hewitt LLP, Oakland, CA.

**Opinion**

**Order Granting the Hayward Unified School District's and the Children's Health Council's Motions to Dismiss**

Now before the Court are the motions to dismiss filed by defendant Hayward Unified School District ("the District") and Children's Health Council ("CHC").[1] Having carefully reviewed the parties' papers, the relevant legal authority, and having had the benefit of oral argument, the Court hereby grants the District's and CHC's motions.

## Background

Plaintiff R.K., a minor, by and through his parents ("Plaintiff"), T.K. and C.K. ("Plaintiff's parents") brings this action against the District, CHC, Alameda County Behavior Health Care Services ("ACBHCS"), and the California Department of Education ("CDE"). Plaintiff is a child eligible for services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. # 1400, et seq., based on his classification as "Autistic Like." (Compl., # 8.) During the 2002-2003 and 2003-2004 school years, Plaintiff attended a public elementary school within the District. *(Id., # 11.)* In February 2003, Plaintiff's parents notified the District that they suspected that Plaintiff had Asperger's Syndrome, a form of autism. *(Id., # 14.)* Around April 2003, the District developed a "Section 504 plan" and submitted a request for assessments in "academic, behavior, occupational therapy, speech, health and intellectual development." *(Id., # 15.)* On April 14, 2003, Plaintiff was diagnosed with "Asperger's Disorder" and "ADHD." *(Id., # 16.)* Plaintiff alleges that the District did not complete all the requested assessments and failed to provide Plaintiff all of the services he needed. *(Id., ## 15, 17-18.)*

On September 11, 2003, on behalf of Plaintiff, Community Alliance for Special Education filed a request for a due process proceeding pursuant to the IDEA. *(Id., # 19.)* On November 8, 2003, the District's speech therapist determined that Plaintiff had a disability that qualified him for assistance under the IDEA. *(Id., # 21.)*

During the 2003-2004 and 2004-2005 school years, the District convened individualized education plan ("IEP") meetings and monitored services provided to Plaintiff, but Plaintiff's parents were not satisfied with either. *(Id., ## 22-25.)* In September 2004, the District offered to Plaintiff's parents to place Plaintiff at a non-public school, but Plaintiff's parents did not believe it was an appropriate placement. *(Id., # 26.)*

On January 31, 2005, Plaintiff's parents initiated a due process complaint raising concerns with the 2002-2003, 2003-2004, and 2004-2005 school years and seeking a determination regarding Plaintiff's prospective placement. *(Id., ## 27-28.)*

In August 2005, Plaintiff's parents and the District entered into a settlement agreement resolving the due process complaint. *(Id., # 29.)* The Settlement Agreement was intended to "resolve any and all disputes, causes of action, and claims concerning [Plaintiff]'s special education and related services arising or occurring up to and through the start of the 2006-2007 school year." *(Id.)* The Settlement Agreement stated that the District would provide educational services to Plaintiff at the Esther B. Clark school ("EBC"), a certified non-public school,[2] during the 2005-2006 school year and extended 2006 school year and that Plaintiff's placement at EBC constituted a free and appropriate public education ("FAPE") for that year. *(Id. # 30.)* The Agreement also provided, in pertinent part:

...

The parties release each other ... from any and all matters, claims, obligations, ... liabilities, ... and causes of action related to educational claims, including, but not limited to, claims arising under the California Education Code, the Individuals with Disabilities Education Act, 42 U.S.C. Section 1983, the Americans with Disabilities Act, the Unruh Act, and Section 504 of the Rehabilitation Act of 1973, whether known or unknown ... [are] hereby released up to and through the start of the 2006-2007 school year.

...

... A breach of any portion of this Agreement shall be considered a breach of the whole Agreement. Should either party breach any portion of this Agreement, the breaching party shall forfeit any and all consideration promised or received under the terms of this Agreement.

...

*(Id., # 30; Declaration of Jennifer Rowe in Support of [the District]'s and [Baugh]'s Motion to Dismiss ("Rowe Decl."), Ex. 2.)*

Plaintiff alleges that the District failed to comply with the Settlement Agreement by, inter alia, failing to facilitate IEP meetings every thirty days and not allowing Plaintiff's parents' expert attend the IEP meetings that did occur. (Compl., # 32.) Beginning in February 2006, EBC indicated that it intended to exit Plaintiff and stop providing him with educational services. *(Id.,* # 36.) Plaintiff has not been in school since the end of the July 2006 extended school year. *(Id.,* # 44.)

On March 7, 2006, Plaintiff's parents filed another administrative due process complaint in the California Office of Administrative Hearings ("OAH"). *(Id.,* # 66.) The due process complaint was dismissed "for failure to amend in the requisite 14 days provided by the [IDEA]." *(Id.,* # 71.) On August 16, 2006, Plaintiff's parents filed an amended due process complaint. *(Id.,* # 72.) Plaintiff alleges that his parents requested in the due process complaint a "stay put order" pursuant to 20 U.S.C. # 1415(j),[3] asserted that the District violated the Settlement Agreement, and asserted that Plaintiff had not been provided appropriate mental health services by ACBHCS. *(Id.,* # 67.)

On September 6, 2006, OAH issued a stay put order directing the District to maintain Plaintiff's placement at EBC during the pendency of the due process action. *(Id.,* # 74.) In November, Plaintiff's parents retained counsel, and on December 4, 2006, believing that the OAH did not have jurisdiction over the pending dispute, filed a Notice of Withdrawal of the due process complaint. *(Id.,* # 75.) Based on the Notice of Withdrawal, the OAH dismissed the action. (Declaration of Mandy Leigh in Support of Reply re Plaintiff's Application for Temporary Restraining Order ("Leigh Decl."), Ex. D.)

### Plaintiff's Claims Against the District

On December 21, 2006, Plaintiff filed an action in this Court. Plaintiff asserts the following claims against the District: (1) injunctive relief based on the District's alleged failure to comply with OAH's stay put order issued on September 6, 2006; (2) declaratory relief based on alleged breaches of the Settlement Agreement; (3) violation of Section 504 of the Rehabilitation Act ("Section 504") and Title II of the Americans with Disabilities Act ("ADA") based on the District's alleged failure to follow the procedural requirements of the IEP process; (4) violation of the Unruh Civil Rights Act, California Civil Code # 51 ("Unruh Act") based on the District's alleged denial of special education instruction, services and access to an education to Plaintiff; and (5) violation of the IDEA and California Education Code ## 56000 et seq. for failing to provide Plaintiff a FAPE. Against Valarie Baugh ("Baugh"), the District's director of special education, in her individual capacity, Plaintiff brings a claim for violation of 42 U.S.C. ## 1983 and 1985 for failing to comply with the Settlement Agreement and by violating the OAH's stay put order.

### Allegations Specific to the CHC

On August 30, 2005, Plaintiff's parents committed to placing Plaintiff at EBC. (Compl., # 31.) Jeanne Rayher, an EBC therapist, notified Maria Less, a licensed clinical social worker, and ACBHCS that she believed Plaintiff did not suffer from Asperger's. *(Id.,* # 34.) Plaintiff's parents became concerned that Plaintiff would not be appropriately served by individuals, such as an EBC therapist, who did not understand Plaintiff's disability. *(Id.)* Plaintiff's parents asked EBC for the assistance of an Asperger's expert. *(Id.)* EBC failed to consider this request. *(Id.)*

Beginning in February 2006, EBC indicated that it intended to exit Plaintiff. *(Id.,* # 36.) Between February and April 2006, Plaintiff's teacher, assistant teacher, and behaviorist all left EBC. *(Id.,* # 38.) On May 5, 2006, an IEP meeting was held, but Plaintiff's regularly assigned staff was not included in the meeting. *(Id.,* # 39.) Moreover, a representative from another non-public school, Keystone, attended the meeting because Keystone was being offered as an alternative placement for Plaintiff. Plaintiff's parents preferred that Plaintiff remain at EBC and have EBC provide additional services to Plaintiff, rather than

have Plaintiff moved to another school. *(Id.)*

On July 18, 2006, and then again on August 18, 2006, EBC unilaterally exited Plaintiff from EBC. *(Id.,* # 41.) Karen Breslow, EBC's interim director, wrote a letter to the District in which she interpreted an order from the CDE as requiring EBC to "cease all services" to Plaintiff. *(Id.)*

On September 21, 2006, EBC, through its counsel, notified the OAH that it would only abide by the stay put order if it were provided a new master contract at a higher rate and if the District provided a ratio of one-to-one for an instructional aide. *(Id.,* # 43.)

### Plaintiff's Claims Against CHC

Plaintiff asserts the following claims against CHC: (1) injunctive relief based on CHC's alleged failure to comply with OAH's stay put order issued on September 6, 2006; (2) violation of Section 504 and the ADA based on CHC's alleged failure to comply with the stay put order and its unilateral decision to exit Plaintiff from EBC; (3) violation of the Unruh Act based on CHC's alleged denial of special education instruction, services and access to an education for Plaintiff; and (4) violation of 42 U.S.C. ## 1983 and 1985 for unilaterally exiting Plaintiff from EBC and violating the OAH's stay put order.

### Proceedings in this Action

Plaintiff filed an Application for Temporary Restraining Order ("TRO") to enforce the OAH's stay put order. On January 22, 2007, the Court denied the application. (Docket No. 26.) Based on the OAH's dismissal of the due process action, the Court found that the stay put order was no longer in effect, and, thus, held there was no order for this Court to enforce.

In his reply brief, Plaintiff also argued, for the first time, that this Court should issue an original stay put order under the IDEA, because the statute authorizes such an order during "the pendency of any proceedings conducted pursuant to [section 1415]." See 20 U.S.C. # 1415(j). The Court declined to issue a stay put order for the following three reasons: (1) Plaintiff inappropriately moved for the first time for such requested relief in his reply brief; (2) Plaintiff was required to, and failed to, first exhaust administrative procedures regarding the dispute as to where Plaintiff should receive future educational services; and (3) the IDEA did not authorize the Court to issue a stay put order based on the proceedings in this Court asserting breaches of the Settlement Agreement. Plaintiff appealed this Court's order denying the TRO, and the Ninth Circuit affirmed.

The District and CHC now move to dismiss Plaintiff's complaint.

### Analysis

### A. Legal Standards on a Motion to Dismiss

When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, the factual allegations of the complaint are taken as true and the non-moving party is entitled to have those facts construed in the light most favorable to him or her. *Federation of African Amer. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996). If the jurisdictional attack is "factual," a defendant may rely on affidavits or other evidence that would be properly before the Court, and the non-moving party is not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. Rather, he or she must come forward with evidence establishing jurisdiction. *Thornhill,* 594 F.2d at 733.

A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") where the pleadings fail to state a claim upon which

relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. CultAwareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994) *(citing Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, while as a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," the Court may consider documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of SantaClara,* 307 F.3d 1119 (9th Cir. 2002) (citation omitted); *see also Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.,* 806 F.2d 1542, 1555 n.19 (9th Cir. 1989).

## B. The District's Motion

### 1. Claim for Injunctive Relief

In count one of his complaint, Plaintiff seeks injunctive relief regarding the District's alleged failure to comply with the stay put order issued by the OAH on September 6, 2005. (Compl., # 82.) On December 4, 2006, Plaintiff withdrew his due process complaint. *(Id.,* # 75.) Based on Plaintiff's Notice of Withdrawal, the OAH dismissed the action. (Leigh Decl., Ex. D.) This Court found that the stay put order was no longer in effect and, thus, held there was no order to enforce. (Docket No. 26.) The Ninth Circuit affirmed this Court's order. The Court's ruling that the stay put order issued by the OAH on September 6, 2005 is no longer in effect and thus cannot be enforced is now the law of the case. *See United States v.Thrasher,* 483 F.3d 977, 981 (9th Cir 2007) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case."); *United States v. Garcia-Beltran,* 443 F.3d 1126, 1129 (9th Cir. 2006) ("According to the law of the case doctrine, on remand a lower court is bound to follow the appellate court's decision as to issues decided explicitly or by necessary implication) (internal quotes and citation omitted). Accordingly, the Court grants the District's motion to dismiss this claim.

### 2. Jurisdictional Requirement to Exhaust Administrative Procedures

The District argues that Plaintiff's claims should be dismissed based on his failure to exhaust the administrative remedies by filing a due process complaint and completing the due process procedures. Exhaustion is a jurisdictional requirement. *Blanchard v. Morton Sch. Dist.,* 420 F.3d 918, 920-21 (9th Cir. 2005) ("If a plaintiff is required to exhaust administrative remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiffs claim."). Moreover, the requirement to exhaust applies to any federal claim under which a plaintiff is "seeking relief that is also available under the IDEA."**4***Robb v. Bethel Sch. Dist.,* 308 F.3d 1047, 1049 (9th Cir. 2002) (quoting 20 U.S.C. # 1415(l)) (requiring exhaustion for claim under 42 U.S.C. # 1983); *see also Kutasi v. Las Virgenes Unif Sch. Dist.,* 494 F.3d 1162, 1169 (9th Cir. 1997) (exhaustion required for claims under 42 U.S.C. # 1983 and Section 504 because all education issues underlying the plaintiffs' claims had not yet been fully resolved); *S.M.,* 2007 WL 108456, (dismissing claims under IDEA, Section 504, ADA and 42 U.S.C. # 1983 for failure to exhaust); *Brown,* 2007 WL 202820, (dismissing Section 504, ADA and 42 U.S.C. # 1983 claims for failure to exhaust).

The dispositive question in determining whether exhaustion is required for a particular claim "is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required." *Robb,* 308 F.3d at 1050. Here,

Plaintiff contends that the District failed to provide him with a FAPE and conduct all of the required IEPs. Plaintiff's alleged injuries "could be redressed to some degree by the IDEA's administrative procedures and remedies." *Id.* at 1054. Accordingly, the exhaustion requirement applies to all of Plaintiffs' federal claims.[5]

Plaintiff argues that exhaustion is not required because "he has already done so by utilizing the compliance complaint process on numerous occasions." (Opp. at 19.) Although it is not exactly clear as to what procedures he is referring, Plaintiff has not yet completed the required due process proceedings. Plaintiff initiated due process proceedings in 2005, but based on the parties' Settlement Agreement reached through mediation, these proceedings ended before the administrative agency conducted an impartial due process hearing. Plaintiff initiated new due process proceedings in 2006, but then withdrew his complaint before the OAH conducted a due process hearing. On appeal of this Court's denial of the TRO, the Ninth Circuit affirmed this Court's holding that Plaintiff was required, but failed, to exhaust administrative remedies. Accordingly, this holding is now the law of the case. *See Thrasher,* 483 F.3d at 981; *Garcia-Beltran,* 443 F.3d at 1129.

To the extent Plaintiff is referring to the complaint he filed before the California Department of Education, such procedures are not a substitute for complying with the due process proceedings. *See Tyler B. v. San Antonio Elementary Sch. Dist.,* 253 F. Supp. 2d 1111, 1118 (N.D. Cal. 2003) ("The initiation of a state level review which did not proceed to a due process hearing is not literal exhaustion nor its equivalent"); *cf. Porter v. Board of Trustees of Manhattan Beach Unif. Sch. Dist.,* 307 F.3d 1064, 1073 (9th Cir. 2002) ("district courts may choose to require or to accept exhaustion of the CRP as a *substitute* for exhausting IDEA procedures in challenges to facially invalid policies") (emphasis in original) (internal quotes and citation omitted). Here, Plaintiff is not bring a facial challenge to an allegedly invalid policy but rather, is contesting the sufficiency of the IEP and the services provided to him. Therefore, Porter does not provide authority for considering alternative procedures as a substitute for exhaustion of the IDEA procedures. Accordingly, Plaintiff has not demonstrated that the requirement to exhaust is excused, and the Court thus grants the District's motion to dismiss Plaintiff's federal claims.

### 3. Settlement Agreement

In Plaintiff's second claim entitled "Declaratory Relief," he seeks a judicial declaration of the parties' rights and obligations under the Settlement Agreement. The District argues that this claim is a state-law contract claim and that to the extent this claim covers conduct that occurred prior to the 2006-2007 school year, it is barred under Rule 12(b)(1) by the release in the Settlement Agreement. To the extent Plaintiff seeks redress for alleged breaches of the Settlement Agreement, the District urges this Court to decline to exercise supplemental jurisdiction over this purported state-law claim.

Although the Court finds that the District's arguments are inapposite, the Court still concludes that this claim should be dismissed for lack of jurisdiction. First, Plaintiff's claim addressing the Settlement Agreement arises under federal law. Plaintiff's parents and the District signed the Settlement Agreement pursuant to a mediation initiated after Plaintiff's parents filed a due process complaint. (Compl., ## 27-29.) The IDEA provides that such settlement agreements may be enforced in federal court. See 20 U.S.C ## 1415(e)(2)(F)(iii) (providing that written agreements resolving due process complaints through the mediation process are "enforceable in any State court of competent jurisdiction or in a district court of the United States"), (f)(1)(B)(iii) (same regarding written settlement agreements reached during a resolution session); *see also C.T. exrel. D.T. v. Vacaville Unif. Sch. Dist.,* 2006 WL 2092613, (E.D. Cal. July 27, 2006) (finding that agreements made pursuant to section 1415(e)(2)(F) may be enforced in federal court); *cf. Traverse Bay Area Intermediate Sch. Dist.,*

Copyright # 2007 LRP Publications                                                                                                      6

2007 WL 2291352, (W.D. Mich. July 27, 2007) (analyzing the significance of the 2004 amendments to the IDEA providing that settlement agreements may be enforced in federal and state courts). Moreover, the purpose of the Settlement Agreement was to resolve the parties' disputes regarding Plaintiff's special education and related services. (Rowe Decl., Ex. 2.) The Settlement Agreement incorporates terms specific to the IDEA, such as FAPE and IEP. The Court would have to refer to the IDEA to determine whether the parties complied with their respective obligations under the Settlement Agreement. *Cf.Hansson v. Norton,* 411 F.3d 231, 235 (D.C. Cir. 2005) (holding that "when a settlement agreement incorporates substantive provisions of federal law such that enforcement of the agreement requires the interpretation and application of federal law," a claim to enforce the settlement agreement arises under federal law). Therefore, the Court finds that Plaintiff's claim concerning the Settlement Agreement arises under federal law.

Second, the District's argument that any claims based on conduct prior to the 2006-2007 school are barred by the release is reviewed by the Court under Rule 12(b)(6), not Rule 12(b)(1). *See Stephen H. v. West Contra Costa Cnty. Unif. Sch. Dist.,* 2007 WL 1557482, (N.D. Cal. May 29, 2007) (holding that a release does not eliminate federal jurisdiction, but rather is merely an affirmative defense which is reviewed pursuant to Rule 12(b)(6)). Plaintiff argues that based on the District's alleged breaches, the District has forfeited any consideration under the Settlement Agreement.**6** At the hearing on this motion, the District responded to Plaintiff by arguing that all of the consideration is provided in paragraph 2 of the Settlement Agreement, which does not include the release. Paragraph 2 is entitled "Actions to Resolve Dispute" and describes actions which the parties agreed to undertake. (Rowe Decl., Ex. 2.) Paragraph 2 does not state that the consideration paid or received by the parties is limited to the provisions of this paragraph. Under California law, consideration is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor... ." *Melican v. Regents of Univ. of Calif.,* 151 Cal. App. 4th 168, 176-77 (2007) (quoting California Civil Code # 1605). Based on this definition, the provision in the Settlement Agreement releasing claims qualifies as consideration. Whether the parties in fact intended the release to be consideration and whether the release was forfeited by the alleged breaches are matters which this Court cannot resolve pursuant to Rule 12(b)(6) based on the Complaint and plain language of the Settlement Agreement. Accordingly, the Court cannot dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) on this basis.

Nevertheless, the Court finds that Plaintiff's claim for breach of the Settlement Agreement should be dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust the administrative procedures. The Court's conclusion holds true for Plaintiff's alleged breaches of the Settlement Agreement, as well as for his allegations regarding conduct that occurred before the 2006-2007 school year. The Settlement Agreement does not constitute exhaustion. Several other courts have considered this issue and held that exhaustion is required for claims concerning breaches of agreements settling due process complaints, especially where the alleged breach relates to the student's receipt of a FAPE. *See e.g., J.P. v. CherokeeCnty Bd. of Educ.,* 218 Fed. Appx. 911, 913-14 (11th Cir. 2007) (affirming court's dismissal of claims for breach of settlement agreement for failure to exhaust where the alleged injuries concerned provision of a FAPE); *Sarah Z. v. MenloPark City Sch. Dist.,* 2007 WL 1574569, (N.D. Cal. May 30, 2007) (finding court lacked jurisdiction to hear breach of contract claim relating to plaintiff's special education services because claim was not exhausted before administrative law judge); *Pedraza*

*v. Alameda Unif. Sch. Dist.,* 2007 WL 949603, (N.D. Cal. March 27, 2007) (holding that IDEA's exhaustion requirement is not satisfied when parties enter into a mediated settlement agreement); *Banks ex rel. Banks v. Modesto CitySchs. Dist.,* WL 2233213, (E.D. Cal. Sept. 9, 2005) (holding that settlement agreement, entered into before a due process hearing had begun and not approved by an administrative law judge, did not constitute exhaustion); *Steward v. Hillsboro Sch.Dist. No. 1J,* 2001 WL 34047100, (D.Or. March 1, 2001) (holding that pursuant to the IDEA, claims for breach of contract must first be presented to the appropriate administrative body).

As one court rejecting the contention that exhaustion would be excused reasoned:

> Allowing the settlement in this case to constitute exhaustion would permit plaintiffs to proceed with their claims without developing a factual record, allowing the educational system to exercise its expertise in resolving this conflict, or providing the parties a full opportunity to avoid excessive litigation in direct contravention of Congress' intent behind the exhaustion requirement.

*S.A.S. ex rel. W.S. v. Hibbing Pub. Schs.,* 2005 WL 1593011, (D. Minn. July 1, 2005). Similarly, in *Steward,* the court noted that as a policy matter, claims for breach of contract relating to IDEA issues, such as a failure to provide an IEP:

> are best resolved in the first instance by someone familiar with the resources available to meet the needs of the disabled and the responsibilities of the district to do so. School systems and education departments should also be afforded the opportunity to correct their own errors before interference from the courts. ... Failure to require exhaustion would encourage parties to circumvent administrative review by entering into, and then disregarding, settlement agreements in order to go directly to federal court.

*Steward,* 2001 WL 34047100.

Here, it appears, based on the Complaint and the documents attached to the RoweDeclaration, that the Settlement Agreement was entered into before a due process hearing had begun and was not approved by the OAH. Although Plaintiff initiated another due process proceeding in 2006 in which it appears that he raised issues relating to the Settlement Agreement, Plaintiff subsequently withdrew his complaint before the OAH conducted a due process hearing.

In opposition to the District's motion, Plaintiff submitted an order from the OAH which provides, in pertinent part:

> [Plaintiff's complaint] mentions a settlement agreement from August 2005, but does not make clear whether Student is attempting to raise claims related to any period covered by the settlement agreement. As noted above, OAH has limited jurisdiction. The jurisdiction of the OAH does not include a school district's alleged failure to comply with a settlement agreement. *(Wymer v. Manhattan Beach Unif. Sch. Dist.* (9th Cir. 2000) 223 F.3d 1026, 1030). Therefore, any claim as to the settlement agreement between the parties is outside the jurisdiction of the OAH.

(Declaration of T.K. in Support of Plaintiff's Opposition to [the District]'s and [Baugh]'s Motion to Dismiss, Ex. A.) Given that Plaintiff subsequently withdrew the due process action in which the OAH issued this order, it is not clear whether this interlocutory order remains reviewable. Nevertheless, to the extent it remains an order that this Court may consider, the Court respectfully disagrees with the OAH's conclusion, based on *Wymer,* that it does not have jurisdiction to review claims relating to the Settlement Agreement. The issue before the court in *Wymer* was whether the Special Education Hearing Office ("SEHO"), OAH's predecessor, had jurisdiction to hear issues regarding compliance with a prior administrative order directing compliance with a settlement agreement. *Wymer,* 223 F.3d at 1027. In that case, the parties reached a settlement agreement and the SEHO hearing officer "ordered the parties to abide by the terms of the settlement." *Id.* at 1027. The Court held that the SEHO did not have jurisdiction to enforce its own order requiring compliance with the settlement agreement. *Id.* at 1030; *see also Porter v. Bd. of Trustees of Manhattan Beach Unif. Sch. Dist.,*

307 F.3d 1064, 1069-1070 (9th Cir. 2002) (describing the *Wymer* court as holding "that the SEHO lacks jurisdiction to enforce its own orders"); *C.T.,* 2006 WL 2092613, n.8 (distinguishing *Wyner* because in that case "a hearing officer actually issued *an order* requiring both parties to comply with the settlement agreement") (emphasis in original). In the absence of a final OAH order regarding enforcement of the settlement, *Wymer* is not a jurisdictional bar to the OAH hearing such claims.

Plaintiff's reliance on *C.T.* for the proposition that exhaustion would be futile is misplaced. In *C.T.,* despite that fact that the OAH had not issued an order requiring compliance with the settlement agreement, the hearing officer held that the OAH lacked jurisdiction to address the alleged breach of the settlement agreement. 2006 WL 2092613, n.8. The district court thus held that the plaintiff carried her burden to exhaust "to the extent possible in the circumstances of [the] case." *Id.* However, *C.T.* is distinguishable. In *C.T.,* the administrative law judge addressed and fully resolved all the issues pending in the due process proceeding. In contrast, here, the order in which the OAH noted that, to the extent Plaintiff was raising a claim as to the Settlement Agreement, the OAH lacked jurisdiction to hear such a claim, was an interlocutory order in which Plaintiff was given leave until November 1, 2006, to file an amended complaint. The Court does not have the full administrative record before it, but presumably, Plaintiff filed an amended complaint because on December 4, 2006, Plaintiff then voluntarily withdrew his due process action. (Compl., # 75.) Plaintiff thus short-circuited the administrative process by withdrawing his complaint before the due process proceedings were completed and all the issues were resolved. *See Wooley v. ValleyCenter-Pauma Unif. Sch. Dist.,* 2007 WL 2023525, (S.D. Cal. Jan. 11, 2007) (finding exhaustion requirement was not satisfied where plaintiff voluntarily withdrew due process complaint before the OAH fully resolved all the issues before it).

Finally, the Court notes that subsequent to Plaintiff filing his complaint in this Court, the District initiated an administrative due process proceeding. Thus, the OAH is currently considering aspects of Plaintiff's special education and services under the IDEA. Addressing whether the Settlement Agreement was breached before the current due process proceeding is completed would be a piecemeal evaluation of the issues and would not be an efficient use of judicial resources. It is likely that issues currently before the OAH overlap significantly with issues this Court would have to evaluate in determining whether the Settlement Agreement was breached. Therefore, the Court holds that Plaintiff thus has not exhausted his claims relating to the Settlement Agreement, nor demonstrated that requiring exhaustion would be futile. The Court agrees with the reasoning of the *J.P., Sarah Z., Pedraza, S.A.S., Banks, and Steward* and finds that exhaustion should be required. *See e.g., J.P.,* 218 Fed. Appx. at 913-14; *Sarah Z.,* 2007 WL 1574569, *Pedraza,* 2007 WL 949603, *S.A.S.,* 2005 WL 1593011, *Banks,* WL 2233213, *Steward,* 2001 WL 34047100. Accordingly, this Court is without jurisdiction to hear Plaintiff's claims relating to the Settlement Agreement and thus dismisses those claims.

### 4. State-Law Claims

The Eleventh Amendment bars claims in federal court against the state and its agencies based on state law violations. *Pennhurst St. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984); *see also Air Transp. Ass'n v. Pub. Utils. Comm'n,* 833 F.2d 200, 204 (9th Cir. 1987). Although the District did not raise this issue, "Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised ... by the court sua sponte." *In re Jackson,* 184 F.3d 1046, 1048 (9th Cir. 1999). School districts are state agencies for purposes the Eleventh Amendment. *Belanger v. Madera Unif. Sch. Dist.,* 963 F.2d 248, 251 (9th Cir. 1992); *see also Petersen v. Mt. Diablo Unif. Sch. Dist.,* 2004 WL 2980746, (N.D. Cal. Dec. 20, 2004) (dismissing claims against school district as barred by Eleventh Amendment).

Accordingly, the Court dismisses Plaintiff's state-law claims against the District because they are barred by the Eleventh Amendment.

### C. CHC's Motion to Dismiss

As summarized by Plaintiff, the essence of his allegations against CHC are that CHC excluded him from school by failing to comply with the stay put order, unilaterally exited Plaintiff from EBC outside of the IEP process, and that CHC continues to engage in ongoing retaliatory conduct toward him and his parents by unilaterally determining that EBC is not an appropriate placement based on unlawful determinations. (Opp. to CHC Mot. at 18.)

### 1. Claim for Injunctive Relief

Plaintiff's claim for injunctive relief regarding CHC's alleged failure to comply with the OAH's stay put order is dismissed for the same reasons the Court dismissed this claim against the District, i.e., the stay put order is no longer in effect and thus there is no order to enforce.

### 2. Jurisdictional Requirement to Exhaust Administrative Procedures

CHC argues that Plaintiff's claims fail based on his failure to exhaust his administrative remedies.[7] Plaintiff argues that his claims should not be dismissed for failure to exhaust because the OAH does not have jurisdiction over CHC, and thus exhaustion would be futile. CHC counters that although the OAH cannot force CHC to re-enroll Plaintiff at EBC because the contract between CHC and the District has expired, the OAH can issue orders requiring the District to provide Plaintiff with FAPE. If EBC is the appropriate FAPE, CHC argues that the OAH could order the District to place Plaintiff there. (CHC's Reply at 3.) Plaintiff has not provided any authority demonstrating that the Court's authority over CHC is any broader than the OAH's to issue an order requiring CHC to comply with the IDEA. To the extent CHC is subject to the IDEA, Plaintiff must first administratively exhaust his claims against CHC. If CHC is not subject to the IDEA, then Plaintiff's claims fail against CHC for failure to state a claim.

Regardless, the Court finds it is appropriate to have the OAH make this determination in the first instance.[8]

Alternatively, to the extent the OAH does have jurisdiction over CHC, Plaintiff contends that he already exhausted the administrative procedures to the extent possible. However, as discussed above, Plaintiff has not yet exhausted his claims through the administrative the due process proceedings. In light of the nature of Plaintiff's allegations, his complaints to the CDE are not a substitute for complying with these due process proceedings. *See Tyler B.,* 253 F. Supp. 2d at 1118; *cf. Porter,* 307 F.3d at 1073. The exhaustion requirements apply despite Plaintiff's characterization of his suit as one for monetary damages. *See Robb,* 308 F.3d at 1048 (holding that plaintiff could not evade IDEA's exhaustion requirement by limiting a claim to monetary damages); *see also Kutasi,* 494 F.3d at 1169 (requiring exhaustion regardless of type of damages sought where all education issues underlying the plaintiffs' claims had not yet been fully resolved). The exhaustion requirement applies to all of Plaintiff's federal claims. Accordingly, the Court grants CHC's motion to dismiss as to Plaintiff's federal claims.

### 3. Plaintiff's Section 504 and ADA Claims

CHC also argues that Plaintiff's claims under Section 504 and the ADA fail because he does not allege discrimination based on disability. In order to state a violation of Section 504, Plaintiff must allege that (1) he is disabled within the meaning of Section 504; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of his disability; and (4) the program providing the benefit or services receives federal financial assistance. *SeeLovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir. 2002). In order to state a claim under the ADA, Plaintiff must make a prima facie showing that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and, (3) such discrimination was by reason

of his disability. *Id.*

To the extent that Section 504 and the ADA create essentially the same rights and obligations, this Court will apply the same analysis to determine whether Plaintiff has stated a claim for which relief can be granted under Section 504 and the ADA. *SeeZukle v. Regents of the University of California,* 166 F.3d 1041, 1045 n.l 1 (9th Cir. 1999) ("There is no significant difference in the analysis of rights and obligations created by the ADA and the Rehabilitation Act. ... Thus, courts have applied the same analysis to claims brought under both statutes.") (internal citations omitted). Thus, in order to plead a claim under either Section 504 or the ADA , Plaintiff must allege (1) he is disabled under the Act; (2) he is "otherwise qualified;" (3) he was denied benefits or services, or otherwise subject to discrimination, solely because of his disability; and (4) CHC receives federal financial assistance (under Section 504), or is a public entity (under the ADA). *See id.* at 1045.

In the special education context, a plaintiff must allege "that the educational decisions relating to the student were so inappropriate as to constitute either bad faith or gross misjudgment." *Alex G. ex rel. Dr. Steven G. v. Bd. of Trustees of DavisJoint Unif. Sch. Dist.,* 387 F. Supp. 2d 1119, 1124 (E.D. Cal. 2005); *see also N.L. v. Knox County Schs.,* 315 F.3d 688, 695-96 (6th Cir. 2003) ("To prove discrimination in the education context, courts have held that something more than a simple failure to provide a free appropriate public education must be shown."); *Sellers v. Sch. Bd.,* 141 F.3d 524, 529 (4th Cir. 1998); *Monahan v. Nebraska,* 687 F.2d 1164, 1170-71 (8th Cir. 1982); *Reid v. Petaluma Joint Union High Sch. Dist.,* 2000 WL 1229059, (N.D. Cal. 2000). Moreover, to the extent Plaintiff seeks money damages, Plaintiff is required, but failed, to allege intentional discrimination. *See Fegurson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998) (holding that compensatory damages are available under the ADA and the Rehabilitation Act for intentional discrimination).

Plaintiff argues that he sufficiently alleged discrimination because he alleges that he was purposefully excluded from school. (Opp. to CHC Mot. at 18.) However, Plaintiff has not alleged that he was excluded from school solely because of his disability. Plaintiff's reliance on this Court's order in *J.C. v. California Sch. for the Deaf,* 2006 WL 2850376, 33 NDLR P 169 (N.D. Cal. Oct. 5, 2006), is misplaced. In *J.C.,* the plaintiff specifically alleged that she had been discriminated against because she was autistic and cognitively impaired, in addition to being deaf. *Id.,* 2006 WL 2850376. In contrast, here, Plaintiff does not allege that he was excluded from EBC because of his disability. Accordingly, the Court grants CHC's motion to dismiss Plaintiffs Section 504 and ADA claims for this independent reason.

### 4. Plaintiff's Unruh Act Claim

CHC moves to dismiss Plaintiff's Unruh Act claim on the grounds that Plaintiff fails to allege discrimination based on his disability. (CHC Mot. at 10.) To state a claim under the Unruh Act, a plaintiff must plead intentional discrimination in public accommodations in violation of the terms of the Act. *Harris v. Capital Growth Investors XIV,* 52 Cal. 3d 1142, 1175 (1991). Plaintiff responds by arguing that his allegations of purposeful exclusion from school are sufficient. (Opp to CHC Mot. at 17.) However, as discussed above, Plaintiff failed to allege that he was excluded because of his disability. Accordingly, the Court grant's CHC's motion to dismiss as to Plaintiff's Unruh Act claim.

### Conclusion

For the foregoing reasons, the Court GRANTS the District's and CHC's motion to dismiss. With the exception of Plaintiff's Unruh Act claim against CHC, the Court dismisses Plaintiffs claims against the District and CHC with prejudice. Plaintiff is provided leave to amend his Unruh Act claim against CHC. However, in the interests of judicial economy and efficiency, the Court sua sponte STAYS further proceedings in this case pending a resolution of the pending proceedings before the OAH.

IT IS SO ORDERED.

<sup>1</sup>The Court grants Plaintiff's request for judicial notice. See Fed. R. Evid. 201.

<sup>2</sup>EBC is owned and operated by CHC. (Compl., # 4.)

<sup>3</sup>Section 1415(j) of the IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." See 20 U.S.C. # 1415(j). This section "commonly referred to as the 'stay put' provision, requires the educational agency to maintain a child's educational program until any placement dispute between the agency and the child's parents is resolved." *See Johnson ex rel. Johnson v. Special Education Hearing Office,* 287 F.3d 1176, 1179 (9th Cir. 2002).

<sup>4</sup>The District argues that the exhaustion requirement applies to Plaintiff's state-law claims as well. Although Plaintiff does not object on this ground, the Court notes that the language of the IDEA restricts the exhaustion to requirement to claims arising under federal law. The IDEA provides, in pertinent part: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 ... title V of the Rehabilitation Act of 1973 ..., or other *Federal laws* protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." See 20 U.S.C. # 1415(l) (emphasis added); *see also M.J. ex rel. G.J. v. Clovis Unif. Sch. Dist.,* 2007 WL 1033444, (E.D. Cal. April 3, 2007) (finding that IDEA did not require exhaustion before Unruh Act claim could be filed). Many courts faced with this issue have dismissed federal claims based on failure to exhaust and then declined to exercise supplemental jurisdiction over the remaining state law claims. *See, e.g., S.M. v. West Contra Costa Cnty Unif. Sch. Dist.,* 2007 WL 108456, (N.D. Cal. Jan. 10, 2007); *Brown v. Napa Valley Unif. Sch. Dist.,* 2007 WL 202820, (N.D. Cal. July 10, 2007); *Fraser v. Tamalpais Union High Sch. Dist.,* 2006 WL 1348427, (N.D. Cal. May 17, 2006); *Payne v. Peninsula Sch. Dist.,* 2007 WL 128884, (W.D. Wash. Jan. 12, 2007).

<sup>5</sup>Although the District does not argue that the exhaustion requirement applies to Plaintiff's claim concerning the Settlement Agreement, because, as discussed below, the Court finds that this claim arises under federal law, the exhaustion requirement applies to this claim as well.

<sup>6</sup>The Settlement Agreement provides, in pertinent part, that: "A breach of any portion of this Agreement shall be considered a breach of the whole Agreement. Should either party breach any portion of this Agreement, the breaching party shall forfeit any and all consideration promised or received under the terms of this Agreement." (Rowe Declaration, Ex. 2.)

<sup>7</sup>As discussed above, the exhaustion requirement under the IDEA applies only to Plaintiff's federal claims.

<sup>8</sup>Notably, in an administrative ruling Plaintiff relies on, although the hearing officer found that the agency did not have jurisdiction over a private school, the hearing officer evaluated whether the private school was subject to and violated provisions of the IDEA, and ordered the school district to take all necessary steps to implement the student's IEP at the private school. *See Lodi Unif. Sch. Dist.,* 26 IDELR 1358, 26 LRP 4574 (Sept. 22, 1997). Even if the OAH determines that it does not have jurisdiction over CHC, the Court finds it would be beneficial to provide the OAH an opportunity to engage in the type of analysis conducted by the hearing officer in *Lodi.* Exhaustion under the IDEA "allows for the exercise of discretion and educational expertise by state agencies, affords full exploration of technical educational issues, furthers development of a factual

record and promotes judicial efficiency by giving state and local agencies the first opportunity to correct shortcomings." *Kutasi,* 494 F.3d at 1167; *see also Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir. 1989) (commenting of the importance of exhaustion: "Federal courts -- generalists with no expertise in the educational needs of [disabled] students -- are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [Act]: that the needs of [disabled] children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each [disabled] child's education. ... Were federal courts to set themselves up as the initial arbiters of [disabled] children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.") (internal quotes and citation omitted).

## Statutes Cited

20 USC 1415(j)
20 USC 1415(l)
20 USC 1415(e)(2)(F)(iii)
20 USC 1415(f)(1)(B)(iii)

## Cases Cited

287 F.3d 1176
420 F.3d 918
308 F.3d 1047
494 F.3d 1162
47 IDELR 253
47 IDELR 69
48 IDELR 129
45 IDELR 211
47 IDELR 35
253 F. Supp. 2d 1111
307 F.3d 1064
46 IDELR 69
48 IDELR 123
48 IDELR 38
218 Fed. Appx. 911
48 IDELR 37
47 IDELR 302
43 IDELR 221
223 F.3d 1026
47 IDELR 66
26 IDELR 1358
873 F.2d 933
387 F. Supp. 2d 1119
315 F.3d 688
46 IDELR 184